192 F.3d 350 (2nd Cir. 1999)
 UNITED STATES OF AMERICA, Appellee,
v.
FERMIN GONZALEZ, ROBERTO MURGADO and JUAN CARLOS ROMAN, Defendants-Appellants,
AGUSTIN NOVELLAS, also known as 9:95cr721-d1, ORLANDO URREGO-LOAIZA, also known as Jimmy, HECTOR LOMBANA, also known as Beto, also known as Darwin, EDGAR RIGOBERTO REYES, also known as Rodrigo, LUIS CARLOS, GUILLERMO HEANO, VICTOR HEANO, CAMILO "LNU," JHON JAIRO GIRALDO, LUIS FERNANDO MILLAN-ECHEVERRY, also known as El Negro, also known as Luis Fernando, ANTONIO FORTICH, ROBERTO SANCHEZ-SALOM, also known as Roberto Sanchez, CEASAR AUGUSTO LONDINO DIOSSA, also known as Ceasar Diossa, RAUL SANCHEZ-BLANCO, FRANCISCO VIELMAN, also known as Paco, GREGORIO DISOTUARDT, JOSE CALATA-SANCHEZ, NELSON LOZANO ZAPATA, ANGEL REYES, MARIO LOUIS GONZALEZ, also known as Jim, JOSE SADY-ARIAS, also known as Andreas Correa, LUIS DELAQUILA, also known as Palomo, FREDDY ALEMEDA, CARLOS ARTURO-ZAPATA and FELIX GONZALEZ-DIAZ, Defendants.
 Docket Nos. 98-1687, 98-1700, 98-1701
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: September 8, 1999
Decided: September 22, 1999
 
 Appeal from judgments of the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., Judge) sentencing defendants to terms of imprisonment for their participation in a cocaine importation and distribution scheme.
 Vacated and remanded.[Copyrighted Material Omitted]
 DEMETRI JONES, Assistant United States Attorney, for ZACHARY W. CARTER, United States Attorney, Eastern District of New York, Brooklyn, N.Y. (EMILY BERGER and EDGARDO RAMOS, on the brief), for Appellee.
 ALEXEI M. SCHACHT, Nalven & Schacht, New York, N.Y., for Defendant-Appellant Fermin Gonzalez.
 NORMAN TRABULUS, Storch, Amini & Munves, P.C., New York, N.Y., for Defendant-Appellant Juan Carlos Roman.
 Before: FEINBERG, CALABRESI, and SOTOMAYOR, Circuit Judges.
 PER CURIAM:
 
 
 1
 Fermin Gonzalez and Juan Carlos Roman, defendants-appellants, appeal from judgments of the United States District Court for the Eastern District of New York (Platt, J.), sentencing them to terms of imprisonment for their participation in a cocaine importation and distribution scheme. Gonzalez was convicted, upon his guilty plea, of conspiracy to distribute cocaine and to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A), and was sentenced to 156 months of imprisonment, five years of supervised release, and a $50 special assessment. Roman was convicted, upon his guilty plea, of distribution of cocaine and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and was sentenced to 132 months of imprisonment, five years of supervised release, and a $50 special assessment.
 
 BACKGROUND
 
 2
 This appeal stems from the prosecution of numerous members of "the Company," a drug importation ring headed by Pastor Parafan-Homen. The Company imported large quantities of cocaine from Colombia for distribution in the New York and New Jersey area. Gonzalez and Roman were among twenty-eight defendants indicted in August 1995 for their participation in the Company. Each cooperated with the government, and each pleaded guilty to the crimes of which he was convicted, pursuant to a cooperation agreement. Each now appeals from his sentence. For the following reasons, we vacate and remand to the district court so that Gonzalez and Roman can be resentenced consistent with this opinion.
 
 DISCUSSION
 A. Gonzalez
 
 3
 At the time he was indicted, Gonzalez was already in custody for crimes involving the Company. On November 29, 1993, he had been arrested by New Jersey state police and charged with state drug crimes. He pleaded not guilty and was in New Jersey state custody awaiting trial at the time of his federal indictment. (Gonzalez later changed his state plea to guilty. At the time of his federal sentencing, however, he had not yet been sentenced on the state charges.) On or about March 8, 1996, he was transferred to federal custody. Gonzalez cooperated with federal authorities and testified at Parafan-Homen's trial, which resulted in a conviction.
 
 
 4
 Pursuant to his cooperation agreement with the government, Gonzalez pleaded guilty before the district court to conspiracy to distribute cocaine and to possess cocaine with intent to distribute. The Probation Department submitted a pre-sentence report ("PSR") for Gonzalez, noting that his total offense level for Guideline purposes was 38. Since Gonzalez had no prior criminal record, the applicable Guideline range was 235 to 293 months.
 
 
 5
 Gonzalez was sentenced on November 16, 1998. The government submitted a § 5K1.1 letter on Gonzalez's behalf, and at sentencing, asked the court "to consider a substantial downward departure" in light of Gonzalez's cooperation. In addition, counsel for Gonzalez pointed out that Gonzalez had been in custody since November 29, 1993 on the New Jersey charges, which stemmed from the same criminal activity that gave rise to the federal charges. Counsel asked the court "to recommend to the Bureau of Prisons that [Gonzalez] receive time credit for all the time spent in [New Jersey] custody because . . . this is the identical criminal conduct."
 
 
 6
 The court sentenced Gonzalez to 156 months in prison, noting that it was making "a substantial[] downward departure." The district court's judgment stated that Gonzalez was to be "given credit for time served from November 29, 1993."
 
 
 7
 It appears that by ordering that Gonzalez be "given credit for time served from November 29, 1993," the district court intended that Gonzalez would serve a total of 156 months in prison on both the federal and state charges against him. In attempting to "backdate" the beginning of Gonzalez's sentence to the date of his New Jersey arrest, however, the district court exceeded its authority. "The Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any time spent in custody." United States v. Montez-Gaviria, 163 F.3d 697, 700-01 (2d Cir. 1998); see also 18 U.S.C. § 3585(a) (1994) (providing that a sentence begins "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served"). Gonzalez will, therefore, serve a sentence that is approximately 27 months longer than the district court apparently intended. The proper way to ensure that Gonzalez served a total of 156 months would have been for the court to increase the downward departure it granted him and sentence him to 129 months.
 
 
 8
 The size of a sentencing court's downward departure is not ordinarily appealable. See Montez-Gaviria, 163 F.3d at 701. We have held, however, that where the district court's failure to depart is premised on a mistaken view of the law, it is reviewable. See id. at 703 ("When the record is ambiguous as to whether a district court has allowed a mistake of law to affect its sentencing decision, we have regularly remanded to allow the court to reconsider its decision in light of our correction of the mistake."). This is such a case.
 
 
 9
 As both Gonzalez and the government request, we therefore vacate Gonzalez's sentence and remand to the district court for resentencing in accordance with this opinion.
 
 B. Roman
 
 10
 Like Gonzalez, Roman contends that the district court erred when it failed to adjust the sentence it imposed to reflect the amount of time he had spent in custody on charges arising out of the same course of conduct, and instead attempted improperly to "backdate" his sentence to give him credit for his prior custody. The government agrees with this contention. Unlike Gonzalez, Roman argues that the district court was required to adjust his sentence in this manner by Sentencing Guideline § 5G1.3(b) and Application Note 2 to that Guideline.
 
 
 11
 Roman also argues that the district court granted him a less generous downward departure than it otherwise would have because of its mistaken understanding of the law. Finally, he contends that, because of Judge Platt's persistently and firmly expressed erroneous views on the scope of his sentencing authority, and to preserve the appearance of justice, his resentencing should be conducted by a different judge.
 
 
 12
 1. Sentencing Error. -- Like Gonzalez, Roman had been previously arrested and incarcerated on charges stemming from the same conduct that gave rise to the instant prosecution. He was arrested on March 30, 1994 in New Jersey, while attempting to transport 98 kilograms of cocaine to New York by truck. On May 17, 1995, the United States District Court for the District of New Jersey sentenced him to ten years' imprisonment.
 
 
 13
 On August 22, 1995, Roman was indicted, along with his codefendants, in the Eastern District of New York. Pursuant to a cooperation agreement, Roman pleaded guilty to one count of distribution of cocaine and possession of cocaine with intent to distribute. Roman later testified at Parafan-Homen's trial.
 
 
 14
 Roman's PSR specified a total offense level of 33. Since Roman had no prior criminal history, the applicable sentencing range was 135 to 168 months. The government submitted a § 5K1.1 letter for Roman, requesting that the court consider granting a downward departure, based on his cooperation and assistance in convicting Parafan-Homen.
 
 
 15
 In objections to the PSR, and at sentencing, counsel for Roman argued that Roman's sentence should be determined pursuant to the provisions of Guideline § 5G1.3(b) and Application Note 2 to that Guideline. We agree. Roman's situation was somewhat different from that of Gonzalez, because he had already begun serving a sentence on the prior federal charges in New Jersey, and the calculation of his sentence was thus governed by § 5G1.3(b) and Application Note 2.[1]
 
 
 16
 Guideline 5G1.3(b) and Application Note 2 prescribe a two-step approach to determining the correct sentence in a situation such as Roman's, where the defendant is already serving a sentence arising out of the same criminal conduct that led to the instant prosecution. First, § 5G1.3(b) mandates that when a court imposes a sentence on a defendant subject to such an undischarged term of imprisonment, the sentence for the instant offense must run concurrently to the undischarged term of imprisonment. See U.S. Sentencing Guidelines § 5G1.3(b) (1998). Second, Application Note 2 to § 5G1.3(b) explains that "the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." Id. § 5G1.3 commentary n.2. Here, the time Roman had spent in custody prior to sentencing was all credited to his New Jersey sentence, and thus could not be credited to the instant federal sentence by the Bureau of Prisons. See 18 U.S.C. § 3585(b) (1994). Application Note 2 therefore applied.
 
 
 17
 At sentencing, on November 25, 1998, counsel for Roman alerted the court to the relevance of Application Note 2, and argued that it meant that "the Court [should] arrive at a sentence in terms of months, and then as a last stage reduce that sentence by the amount of time that the defendant has already served on his undischarged term of imprisonment." The court responded, "Well, I am not going to do it that way. I will just measure my sentence from that original date," apparently meaning March 30, 1994, the date of Roman's New Jersey arrest. The court then sentenced Roman to 132 months, a three-month downward departure from the Guideline range. The court explained, "[Roman] is doing a ten year sentence from March 30th, 1994. So the net effect is he has one more year to do after his sentence in New Jersey expires." The district court's judgment provided that the 132 month sentence was to be served "concurrently, effective from March 30, 1994, with the sentence defendant is now serving which was imposed in U.S. District Court/New Jersey."
 
 
 18
 The district court thus correctly followed Guideline § 5G1.3(b) in making Roman's new sentence run concurrently with his prior New Jersey sentence. It also attempted to give Roman credit for the time spent in custody on the New Jersey charges. The court, however, improperly sought to achieve this result by "backdating" the sentence it imposed, rather than following Application Note 2's procedure and subtracting time already served from the sentence. As of November 25, 1998, the day he was sentenced, Roman had spent approximately 56 months in custody. To achieve the result the district court apparently intended, and consistent with § 5G1.3(b) and Application Note 2, Roman's sentence should have been approximately 76 months, to run concurrently with the sentence he was already serving.
 
 
 19
 A 76 month sentence, however, would still represent a downward departure of only three months from the Guideline range. And Roman also challenges the size of this downward departure, arguing that the court reduced the downward departure it would otherwise have granted to offset the effect of the backdating. Roman points out that all the other defendants received much larger downward departures.
 
 
 20
 As discussed above, where a district court's failure to grant a downward departure is premised on a mistaken view of the law, it is reviewable. See Montez-Gaviria, 163 F.3d at 703. The sentencing transcript is unclear as to whether the district court believed that only a three-month departure was warranted for the defendant's cooperation or whether it improperly believed that it had separately to punish the defendant's two arrests and convictions, even though § 5G1.3 and Application Note 2 set out the manner in which the punishment for the defendant's total conduct for the two convictions was to be adjusted. Because it is unclear whether the court's mistake of law affected its decision to grant only a three-month downward departure, we remand to the district court for reconsideration of its downward departure decision and for resentencing in light of that reconsideration and of the applicable Guideline principles discussed above. It appears that the government does not object to this result.
 
 
 21
 2. Reassignment. - Roman argues that, to preserve the appearance of justice, his resentencing should be conducted by another judge. Although we have, from time to time, directed that a case be assigned to a different judge for resentencing, see generally United States v. Robin, 553 F.2d 8 (2d Cir. 1977) (per curiam) (in banc) (describing the grounds on which reassignment would be appropriate), reassignment is not necessary on the facts of this case. Where personal bias of the judge is not alleged (and it is not alleged here), Robin directs us to consider the following factors:
 
 
 22
 (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
 
 
 23
 Id. at 10. Reassignment is not ordinarily warranted merely because "a sentencing judge has been shown to have held erroneous views," United States v. Bradley, 812 F.2d 774, 782 (2d Cir. 1987), and Judge Platt's misapprehension of the law is not the sort of "previously-expressed view[]" that one would have difficulty putting out of one's mind, once it was corrected. We do not doubt that, on remand, Judge Platt will resentence the defendant consistently with the principles expressed in the Guidelines and in this order, and we therefore do not direct that the case be reassigned.[2]
 
 
 24
 * * *
 
 
 25
 The sentences of Gonzalez and Roman are VACATED and REMANDED to the district court for resentencing consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 We do not decide whether Application Note 2 could also apply in circumstances such as Gonzalez's, where at the time of sentencing for the instant offense, the defendant has not yet been sentenced on the prior related charge for which he was in custody in another jurisdiction. Gonzalez has not argued that Application Note 2 applies to his case. And because a downward departure that effectuated Judge Platt's intent to give Gonzalez credit for the time he spent in state custody would achieve the same result as would be required by Application Note 2, we need not decide that question.
 
 
 [2]
 As it happens, however, the Eastern District of New York normally assigns resentencing to a different judge, in keeping with its local rules. See Eastern District Guidelines for the Division of Business Among District Judges, Rule 50.2(l)(1) (1997). Roman may well, therefore, get his wish.