**UNITED STATES of America,**
**Appellee,**

v.

**Wilson Silvero Gil FERMIN,**
**Defendant–Appellant.**

**Docket No. 00–1417.**

United States Court of Appeals,
Second Circuit.

Submitted Nov. 27, 2000.

Decided May 29, 2001.

Jeffrey A. Udell, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York, NY (Andrea L. Labov, Assistant United States Attorney), for Appellee.

Cecillia D. Wang, The Legal Aid Society Federal Defender Division Appeals Bureau, New York, NY, for Defendant–Appellant.

Before: McLAUGHLIN, POOLER, Circuit Judges, and DRONEY, District Judge.*

DRONEY, District Judge:

Wilson Silvero Gil Fermin ("Fermin") appeals from a judgment of conviction entered on June 5, 2000, by the United States District Court for the Southern District of New York (Berman, *J.*). Fermin pled guilty under 8 U.S.C. § 1326(a) and (b)(2) to re-entering the United States illegally after deportation. He was sentenced to a term of imprisonment of 57 months to be served concurrently with the remaining

---

* The Honorable Christopher F. Droney, of the United States District Court for the District of Connecticut, sitting by designation.

portion of a state sentence arising from a parole violation.[1] At sentencing, the district court declined to reduce Fermin's sentence by the amount of time he had already served on the state parole violation sentence.

The principal issue in this appeal is whether the district court had authority under § 5G1.3(c) of the United States Sentencing Guidelines to "credit" Fermin for the time he had served on the state parole violation sentence. Fermin also argues that the district court improperly decided not to depart downward to achieve the same result.

We affirm and hold that the district court correctly concluded that it lacked the authority to adjust Fermin's sentence under § 5G1.3(c), and that the district court did not misapprehend its authority to depart downward.

## I. BACKGROUND

In 1994, after illegally immigrating to the United States from the Dominican Republic, Fermin was convicted of first-degree robbery in New York state court. He subsequently was deported on July 31, 1996, but illegally returned to the United States. In March 1999, Fermin was arrested in New York and detained on state drug possession charges. On May 27, 1999, he pled guilty to possession of a

controlled substance and was sentenced to time served.

Fermin's drug arrest occurred while he was still on parole for his robbery conviction. On May 24, 1999, he appeared before a state parole board and was found in violation of his parole conditions because of his unlawful re-entry into the United States. The parole board revoked his parole and ordered that Fermin be incarcerated until August 9, 2000.

On November 2, 1999, while he was serving his sentence for the state parole violation, Fermin was indicted for illegally returning to the United States under 8 U.S.C. §§ 1326(a) and (b)(2).[2] The indictment charged him with illegally re-entering the United States after having been deported subsequent to a conviction of an aggravated felony, namely, his 1994 state conviction for robbery. On January 13, 2000, he pled guilty to the indictment, and was sentenced on June 2, 2000.

### A. The Sentencing Hearing

The presentence report for Fermin calculated a Guidelines range for his violation of 8 U.S.C. § 1326(a) and (b)(2) at 57 to 71 months based on a criminal history category of IV and an adjusted offense level of 21.[3] At sentencing, Fermin argued for a concurrent sentence both as to the remaining portion of his state sentence for the parole violation and for the time he had

---

1. A three year term of supervised release and a $100 special assessment were also imposed as part of the district court's sentence.

2. Section 1326(a) provides, in part, that any alien who has been deported and later enters the United States without the consent of the Attorney General shall be subject to a term of imprisonment. Under § 1326(b)(2), the maximum term of imprisonment for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony" is twenty years. Fermin's first-degree rob-

bery conviction was an "aggravated felony" under 8 U.S.C. § 1101(a)(43).

3. Fermin's adjusted offense level was based on a base offense level of eight pursuant to § 2L1.2(a) of the Guidelines, a sixteen-level enhancement under § 2L1.2(b)(1)(A) because the robbery conviction constituted an aggravated felony, and a three level downward adjustment for acceptance of responsibility pursuant to § 3E1.1(a) and (b). There is no dispute concerning the Guidelines calculations.

already served on that sentence.[4] As to the latter, he asked that he be "credited" for this time in two ways.[5] He argued that under U.S.S.G. § 5G1.3(c) and Application Note 2 to § 5G1.3, the court should subtract from his federal sentence the time already served for his parole violation, or that the court should depart downward.

The court sentenced Fermin to a term of imprisonment of 57 months, to run concurrently with the remaining portion of the state parole violation sentence. It rejected Fermin's argument that he was due a "credit" under Application Note 2 for the time already served. The court also declined to grant Fermin's application for downward departure so as to reduce the sentence by the time Fermin had served.[6] As to the request for a downward departure,[7] the district court stated:

I do not feel here either that there are aggravating or mitigating circumstances of a kind or to a degree that are not adequately already taken into consideration by the Sentencing Commission in formulating the guidelines.... The rationale is that the underlying offense here which gave rise to parole was the underlying conviction of robbery in the first degree, not the offense of illegal

reentry.... I am also aware of my discretion to downwardly depart for a combination of circumstances.... I do not feel that this is a situation where a downward departure is warranted based on a combination of factors or circumstances as opposed to any one individual branch put forward.

## II. DISCUSSION

On appeal, Fermin makes two arguments. First, he contends that the court erred in holding that it lacked the authority under § 5G1.3(c) of the Guidelines to apply the methodology provided in Application Note 2 of § 5G1.3 of the Guidelines. Second, Fermin argues that the district court was wrong in concluding that a downward departure was not specifically permitted under § 5G1.3(c). In other words, Fermin maintains that § 5G1.3(c) permits a downward departure simply "to achieve the desired degree of concurrency," and a court need not conduct the usual departure analysis under § 5K2.0 of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

---

**4.** Assuming that Fermin's state sentence began on May 24, 1999, the day that the parole board found him in violation of his parole conditions, or on May 27, 1999, when he was sentenced to time served on the state drug charge, he had served twelve months in state custody at the time of his federal sentencing. At sentencing, the district court indicated that Fermin had spent eleven months in state custody, but this difference is of no moment here.

**5.** The fact that Fermin had not yet completed his state sentence at the time of his federal sentencing is critical because "[i]f the defendant has completed his state prison term before the federal sentence is imposed, § 5G1.3 does not apply, and his federal prison term cannot be imposed concurrently." *United States v. Labeille–Soto,* 163 F.3d 93, 99 (2d Cir.1998).

**6.** The government argues that the district court did not rule that it lacked the authority to reduce the defendant's sentence using Application Note 2, and that Fermin abandoned his downward departure request (and thus waived his right to appeal that issue). However, after reviewing the transcript of the sentencing hearing, we conclude that the district court ruled on the defendant's Application Note 2 request. Further, it is clear that the defendant pursued a downward departure, and the court ruled on that as well.

**7.** Fermin also requested that the court depart based on extraordinary family circumstances, a request which was denied at sentencing. Fermin does not appeal the denial of a downward departure on that basis.

## A. U.S.S.G. § 5G1.3(c) and Application Note 2

### 1. The Framework of U.S.S.G. § 5G1.3

The Sentencing Reform Act of 1984 provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). Section 5G1.3 of the Guidelines also applies when a court is sentencing a defendant who has been "convicted of committing an offense while subject to an undischarged term of imprisonment for a previous conviction." *United States v. Maria*, 186 F.3d 65, 68–69 (2d Cir.1999). Subsection (a) of § 5G1.3 applies when the new offense was committed while the defendant was serving a term of imprisonment, and requires that any new period of imprisonment be consecutive to the preexisting one. Subsection (b) applies when "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense." In that situation, subsection (b) requires that the new sentence run concurrently with the remaining portion of the preexisting sentence of incarceration. Although subsection (b) does not address time already served on the preexisting sentence, Application Note 2 provides that the defendant be credited for that time. It states, "When a sentence is imposed pursuant to subsection (b), the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." U.S.S.G. § 5G1.3, cmt. n.2; *see also United States v. Gonzalez*, 192 F.3d 350, 354 (2d Cir.1999) (describing the approach of subsection (b) and Application Note 2).[8]

Subsection (c) of § 5G1.3 "is a catch-all provision, [which] generally vests broad discretion in the sentencing court in those situations not governed by subsections (a) and (b)." *Maria*, 186 F.3d at 71.[9] It provides that in cases not covered by subsections (a) or (b), "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Several application notes offer additional direction for applying subsection (c). Note 3 provides factors that a district court should consider in determining whether to sentence a defendant to a concurrent, partially concurrent, or a consecutive sentence. Note 4 sets forth the methodology to employ when fashioning a partially concurrent sentence in a subsection (c) case. Note 5 directs courts in complex situations to exercise their discretion under subsection (c) to fashion a "reasonable punishment for the instant offense." Finally, Note 6 provides that if the defendant was on parole, probation, or supervised release at the time of the instant offense, and it is revoked, the sentence for the instant offense should run consecutively to the revocation sentence.

---

8. Application Note 2 indicates that this "credit" is not a departure. It states, "For clarity, the court should note on the Judgment in a Criminal Case Order that the sentence imposed is not a departure from the guideline range because the defendant has been credited for guideline purposes under § 5G1.3(b) with [time] served in state custody that will not be credited to the federal sentence under 18 U.S.C. § 3585(b)."

9. Subsection (c) is a policy statement, and this Court has not yet decided whether it is binding on district courts at sentencing. *Maria*, 186 F.3d at 69 n. 4.

## 2. Application of the Guidelines

 There is no dispute that this case falls under subsection (c). Subsection (a) does not apply because the offense of illegal reentry was not committed while Fermin was serving a term of imprisonment. Subsection (b) does not apply because "when a criminal defendant is imprisoned as a result of his violation of the terms of his parole, the 'offense' that 'results' in his imprisonment is, for the purposes of § 5G1.3(b), the underlying prior offense of conviction, not the conduct violative of his parole conditions." *United States v. Garcia–Hernandez*, 237 F.3d 105, 110 (2d Cir. 2000). Here, the underlying offense is Fermin's 1994 state robbery conviction, not his parole violation. Because the robbery conviction has not been "fully taken into account" in determining the offense level for the instant offense, subsection (b) is not relevant.

 Fermin argues, however, that even though subsection (b) does not apply, the methodology of Application Note 2 for giving "credit" for time served should be applied to subsection (c) cases where, as here, the defendant has served time in state custody that will not be credited towards his federal sentence. *See* 18 U.S.C. § 3585(b). Fermin contends that this "credit" is particularly appropriate for him, given that the time he served in state custody was related to the parole violation that gave rise to the instant offense, and because he would have been released earlier from his state sentence but for the federal prosecution.[10]

 With respect to a purely legal question concerning the application of a guideline, the district court's decision will be reviewed *de novo*. *Maria*, 186 F.3d at 70 (citing *United States v. Kirvan*, 86 F.3d 309, 311 (2d Cir.1996)). Here, the district court did not err in concluding that Application Note 2 does not apply to subsection (c) situations. First, the language of Application Note 2 indicates that it only applies to subsection (b) cases, not subsection (c) cases. The underlined heading of Application Note 2 states that it specifically

---

**10.** According to the parole board's order, Fermin was eligible for early release on his conditional release date of February 28, 2000. Fermin contends that the reason he was not released on this date was because he had been taken into federal custody by writ of habeas corpus ad prosequendum on November 18, 1999. He also did not receive credit toward his federal sentence for any time he served before his federal sentencing date of June 2, 2000, because that time was credited towards his state sentence.

Under 18 U.S.C. § 3585(a), a defendant's federal sentence begins when he or she "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." However, a defendant held at a federal detention facility is not "in custody" for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum. *See Roche v. Sizer*, 675 F.2d 507, 510 (2d Cir. 1982) (decided under a previous version of § 3585); *Thomas v. Whalen*, 962 F.2d 358, 361 n. 3 (4th Cir.1992) (same). Further, under 18 U.S.C. § 3585(b)(2), the state time that Fermin had served before his federal sentencing, including the period of time after his conditional release date, would not be credited towards his federal sentence, because a defendant is credited only for the following:

any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendants was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added). The Bureau of Prisons could not credit Fermin for the time he had already served because it was credited against another sentence—the state parole violation—even though he might have been discharged earlier on his state sentence.

applies to subsection (b) cases and the text that immediately follows the heading does the same. Also, the organization and language of other § 5G1.3 application notes suggests that Note 2 is not as expansive as Fermin argues. Three separate application notes (Notes 3, 4, and 5) state that they apply to subsection (c) cases. Had the Sentencing Commission intended Note 2 also to be applied to subsection (c) situations, it would have indicated it either in its heading or its text, or certainly would have mentioned it in these application notes.

██ Fermin also argues that the use of the term "concurrent," together with the term "partially concurrent," in subsection (c) implies that subsection (c) confers the authority to reduce the sentence for the instant offense by the time served on the preexisting sentence. However, the language of subsection (c) and its Application Note 4 indicates that this interpretation is not correct. Application Note 4 makes clear that concurrency determinations under subsection (c) apply to the undischarged portion of a defendant's sentence. A partially concurrent sentence begins on a specified date in the future, at which time the defendant has not yet been released from his undischarged sentence. U.S.S.G. § 5G1.3(c), cmt. n.4. Thus, only part of the undischarged portion of the preexisting sentence will be served concurrently with the sentence for the instant offense. Accordingly, a concurrent sentence under subsection (c) is concurrent with the entire *undischarged* portion of the defendant's preexisting sentence.

Limiting the applicability of Application Note 2 to subsection (b) cases also is con-sistent with the apparent purposes of the various subsections of § 5G1.3. In cases where subsection (b) applies, the defendant faces punishment for the same criminal conduct in two prosecutions. *See Garcia–Hernandez,* 237 F.3d at 109. In those situations, subsection (b) ensures that the defendant receives "credit" for time already served to eliminate double punishment. *See Witte v. United States,* 515 U.S. 389, 404–05, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (holding under the previous version of § 5G1.3 that subsection (b) is intended to ensure that no defendant is punished twice for the same criminal conduct); *Garcia–Hernandez,* 237 F.3d at 109. In contrast, in a subsection (c) case, the defendant is sentenced for an offense involving criminal conduct that differs from that which produced the undis-charged sentence.

██ Subsection (c) does not provide the same "credit" that is available under subsection (b) for time already served, but permits the sentencing court to exercise discretion in fashioning the new sentence to account for the time remaining on the preexisting sentence. In so doing, the Sentencing Commission drew a clear distinction not only among the situations that require the application of subsections (a), (b), or (c) of § 5G1.3, but also as to the treatment of served and unserved portions of preexisting sentences under subsection (c). That subsection provides considerable latitude to the sentencing court to fashion a consecutive, partially concurrent, or concurrent sentence as to the remaining portion of the preexisting sentence,[11] but does not authorize a "credit" or reduction for time already served.[12] Thus, subsection

**11.** Subsection (b) of Application Note 3 to § 5G1.3 specifically states that the sentencing court should consider the amount of time already served on the undischarged sentence in deciding whether to impose a concurrent, partially concurrent, or consecutive sentence under subsection (c).

**12.** Fermin argues that defendants could be exposed to divergent sentences arising from

(c) does not permit courts to reduce a defendant's sentence below the guidelines range for time already served on a different sentence, and does not import the "credit" approach of Application Note 2 to subsection (b).[13]

## B. Downward Departure

The district court decided that it would not depart downward from the range provided by the Guidelines to reduce Fermin's sentence by the time Fermin had already served on the state sentence because of the lack of aggravating and mitigating circumstances of a kind or to a degree not already taken into account by the Sentencing Guidelines, thus applying an analysis under § 5K2.0 of the Sentencing Guidelines. Fermin argues that the court erred in determining that it could not depart based upon subsection (c) of U.S.S.G. § 5G1.3.

We have acknowledged on several occasions that a sentencing court may depart downward to account for time already served. For example, in *United States v. Montez–Gaviria*, we stated that "a period of time during which an alien is incarcerated solely due to the federal government's delay in transferring him to federal custo-dy and for which the alien does not receive credit toward his sentence provides a valid ground for departing from the Guidelines, at least to the degree that the departure approximately compensates the alien for the uncredited time of confinement." 163 F.3d 697, 702 (2d Cir.1998). Similarly, in *Labeille–Soto*, this Court, although rejecting the particular reasons the district court set forth for a downward departure, suggested that a sentencing court could grant a downward departure to address time already served on a preexisting state sentence. *See* 163 F.3d at 101; *see also Garcia–Hernandez*, 237 F.3d at 107 n. 1 (district court had granted a downward departure because the time that the appellant spent in pre-sentencing federal detention was "effectively uncredited" toward either the state or federal sentence).[14] Both *Montez–Gaviria* and *Labeille–Soto* specifically cite § 5K2.0 as the authority for such departures. *See Montez–Gaviria*, 163 F.3d at 701; *Labeille–Soto*, 163 F.3d at 100–01.

Fermin argues, however, that the court need not conduct a § 5K2.0 departure analysis and that downward departures are permitted by § 5G1.3(c). But, as this Court has previously noted, "[Section]

---

"the happenstance of timing" if district courts lack authority to reduce defendants' sentences under Application Note 2. However, " 'ordinary accidents of acceleration or delay' are simply part of the criminal process, in contrast to 'extreme' or 'sinister' delays concocted to increase a sentence." *United States v. Acevedo*, 229 F.3d 350, 356 (2d Cir.) (quoting *United States v. Saldana*, 109 F.3d 100, 104 (1st Cir.1997)), *cert. denied*, —— U.S. ——, 121 S.Ct. 602, 148 L.Ed.2d 514 (2000).

**13.** The government argues that another reason why the district courts should not apply Note 2 to cases arising under subsection (c) is that doing so would require courts to "backdate" sentences. "[T]he determination of the precise date on which a sentence begins appears to have been intended to be a ministeri-al decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served." *Labeille–Soto*, 163 F.3d at 98; *see also United States v. Gonzalez*, 192 F.3d 350, 353 (2d Cir.1999). However, under the methodology provided by Note 2, the district court does not set the date on which the sentence begins, it merely adjusts the new sentence to account for time already served.

**14.** This Court also has held under a former version of § 5G1.3 that a downward departure was a means by which a "reasonably incremental punishment" could be achieved in situations where subsections (a) and (b) did not apply. *United States v. Whiteley*, 54 F.3d 85, 91–92 (2d Cir.1995).

5G1.3(c) of the 1998 U.S.S.G. and its accompanying application notes do not contain any language authorizing the district court to grant a downward departure in order to achieve a reasonable incremental punishment." *Acevedo,* 229 F.3d at 357. In contrast, application notes to other guidelines sections specifically recognize departures. For example, under U.S.S.G. § 2Q1.2, which pertains to offenses involving hazardous waste disposal, Application Notes 5 through 9 provide for departures based on factors set forth in their texts. *See also* U.S.S.G. § 2F1.1, cmt. nn.11, 12 (providing for upward departures under certain circumstances in cases involving fraud, forgery, and offenses involving altered or counterfeit instruments); U.S.S.G. § 2G2.2, cmt. n.2 (providing for upward departures in some cases involving trafficking, receiving, or possessing material involving the sexual exploitation of a minor where the defendant also engaged in the sexual abuse of a minor).

▮▮ Although the language of the former version of subsection (c) of § 5G1.3 differed somewhat from the current version, it also is noteworthy that this Court held that the former subsection (c) alone did not permit a court to reduce a defendant's sentence below the minimum sentence provided in the guidelines, even though a downward departure was specifically mentioned in an accompanying application note.[15] In *United States v. Whiteley,* we stated, "§ 5G1.3(c) does not itself authorize a court to impose a sentence below the guideline minimum in order to replicate the total punishment that would have been imposed upon [the defendant] had he been sentenced for all relevant offenses at once." 54 F.3d at 91 (quotation omitted) (decided under the pre 1995 version of § 5G1.3(c)). Hence, § 5K2.0 provides the guidance for a downward departure concerning time already served on an undischarged sentence, not § 5G1.3.[16]

▮▮ Fermin requested that the district court depart downward so that he would be credited on his federal sentence for the time he had already served on the state parole violation, and, as Fermin characterized it, not be punished twice for the same

**15.** The previous version of subsection (c) provided, "(Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." U.S.S.G. § 5G1.3(c) (1994). Application Note 3 explained that a consecutive sentence is not required when a reasonable incremental punishment may be achieved through the use of a concurrent sentence. Note 3 also described a methodology for fashioning a concurrent sentence. "[T]his methodology [did] not, itself, require the court to depart from the guideline range established for the instant offense." U.S.S.G. § 5G1.3(c), cmt. n. 3. Instead, it was "meant to assist the court in determining the appropriate sentence (*e.g.*, the appropriate point within the applicable guideline range, whether to order the sentence to run concurrently or consecutively to

the undischarged term of imprisonment, or whether a departure [was] warranted)." *Id.*

**16.** "[T]he sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Further, "Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *see also United States v. Tappin,* 205 F.3d 536, 539–40 (2d Cir.), *cert. denied,* 531 U.S. 910, 121 S.Ct. 260, 148 L.Ed.2d 189 (2000); *Labeille–Soto,* 163 F.3d at 100–01.

offense.[17] At sentencing, the court, after articulating the appropriate standard for departures under § 5K2.0 of the Guidelines, indicated that it declined to depart "based on the concept of double punishment for the same offense" because "the underlying offense here which gave rise to parole was the underlying conviction of robbery in the first degree, not the offense of illegal entry."[18] The court also specifically recognized its authority to depart for "a combination of factors or circumstances," but decided against a departure on that basis as well. *See United States v. Rioux*, 97 F.3d 648, 663 (2d Cir.1996).

Only where the district court's failure to depart is premised on a mistaken view of the law, is it reviewable. *Montez–Gaviria*, 163 F.3d at 701. "A defendant's contention that the sentencing court should have granted a downward departure is ordinarily not a proper matter for appeal, unless the refusal to depart resulted from an erroneous interpretation of the law, or was based on the court's erroneous view of the extent of its departure authority." *Labeille–Soto*, 163 F.3d at 100 (citations omitted). Here, the district court properly recognized its authority to depart but declined to do so. Accordingly, its decision not to depart is not reviewable.[19]

## III. CONCLUSION

The district court was correct at sentencing in concluding that Fermin was not entitled to credit for the time he had already served on his state parole violation sentence under Application Note 2 to § 5G1.3 of the Guidelines, and was also correct in its understanding of its ability to depart downward. As such, its decision not to depart downward is not a proper subject of review by this Court and the judgment of conviction and sentence is affirmed.

---

17. Fermin had also specifically requested that the district court consider that he served additional time on his state parole violation sentence because of the federal prosecution. *See Garcia–Hernandez*, 237 F.3d at 107 n. 1; *see also supra* note 10. Also, the record indicates that a downward departure was not requested on the basis of delay in commencing his federal prosecution or in transferring him to federal custody. *See Acevedo*, 229 F.3d at 356–57.

18. Because *Garcia–Hernandez*, 237 F.3d at 107–08, held that § 5G1.3(b) is not applicable to a defendant when his undischarged term of imprisonment resulted from an offense that had not been fully taken into account in determining the offense level for the instant offense, that circumstance alone cannot serve as a basis for a departure. Such a situation would not be "unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon*, 518 U.S. at 98, 116 S.Ct. 2035.

19. The district court decided to impose Fermin's federal sentence concurrent with the undischarged portion of Fermin's state sentence. Under Application Note 6, district courts "should" impose a sentence for the instant offense to run consecutively to any term imposed for a violation of state probation, parole, or supervised release. U.S.S.G. § 5G1.3, cmt. n.6. However, a consecutive sentence is not required, as courts "retain[ ] the discretion under Note 6 to sentence a defendant concurrently or partially concurrently." *Maria*, 186 F.3d at 72.