**UNITED STATES of America, Appellant–Cross–Appellee,**

v.

**Juan Francisco LOS SANTOS, aka Jose Reyes, aka Carlos Reyes, aka Julio Mejia, Defendant–Appellee–Cross–Appellant.**

Nos. 01–1058, 01–1068.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 2001.

Decided March 5, 2002.

Tina E. Sciocchetti, Assistant U.S. Attorney, Northern District of New York, Albany, N.Y., for Appellant.

Alexander Bunin, Federal Public Defender, Albany, N.Y.; Molly Corbett, on the brief, for Defendant–Appellee.

Before VAN GRAAFEILAND, WINTER, and SACK, Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

In this case we are asked to decide whether the district court appropriately departed from the Sentencing Guidelines to account for a criminal defendant's loss of opportunity to serve concurrent sen-

tences for both his federal and state crimes due to the government's delay in instituting prosecution.

### BACKGROUND

In 1991, Juan Francisco Los Santos, a citizen of the Dominican Republic, illegally entered the United States. Within four years of his illicit arrival here, he was convicted in a New York State court of three felony narcotics charges and one count of Third Degree Criminal Possession of a Weapon, for which he was incarcerated and placed on a term of parole for life. The Immigration and Naturalization Service (INS) deported Los Santos in 1998.

Despite his expulsion from the United States, Los Santos once again found himself under arrest in New York on October 13, 1999. Using the alias "Omar Vasquez," Los Santos was charged with possession of stolen property and unauthorized use of a motor vehicle. Although New York issued a warrant for Los Santos for violating his parole, the underlying charges that formed the basis of the violation were dropped.

On December 6, 1999, during a routine screening of inmates at the Ulster Correctional Facility in New York, INS discovered Los Santos' illegal presence in this country after deportation. Fingerprint comparisons on March 14, 2000 confirmed that he was the same person deported just a year earlier, and the INS took custody of him for removal proceedings on March 21, 2000. On April 6, 2000, Los Santos was indicted for illegal reentry after deportation in violation of 8 U.S.C. § 1326. Los Santos pleaded guilty to the indictment on July 5, 2000.

At sentencing, Los Santos requested that the district court depart from the guideline range under U.S.S.G. § 5K2.0 to give Los Santos credit for the period between his arrest and the date of the indictment. Los Santos argued below, as he does here, that the government had de-layed his prosecution until after his release from state custody. According to Los Santos, this delay deprived him of the opportunity to receive a federal sentence concurrent with the state sentence for his parole violation. As would be expected, the government opposed the departure.

The district court agreed with Los Santos. The court below granted him a downward departure of fourteen months, which credited him with the entire period of his custody from the date of his state arrest in New York City until his federal sentencing. Los Santos was thus sentenced to a term of 56 months imprisonment, which reflected a fourteen-month downward departure from the bottom of the guideline range of 70 to 87 months. The incarceration was to be followed by a three-year term of supervised release. The government now seeks to have this Court reverse the district court's downward departure. For the reasons discussed below, we vacate the district court's ruling and remand for new sentencing.

### DISCUSSION

■ A sentencing judge's decision to depart downward from the sentencing guideline range is reviewed by this Court for an abuse of discretion. *Koon v. United States,* 518 U.S. 81, 99–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The government argues that the district court abused its discretion in three principal respects with regard to its departure: (1) that in order to depart due to Los Santos' "lost opportunity" to serve a concurrent sentence, Los Santos needed to show some extreme delay or sinister motive on the part of the government; (2) that the district court "double counted" time that will be credited by the Bureau of Prisons; and (3) that the court impermissibly granted Los Santos credit for time he spent in state custody

before INS knew of his presence in this country.

INS became aware of Los Santos' presence in this country while he was in a state custodial drug treatment program, on December 6, 1999. Los Santos was scheduled to be released from this program sometime between March 21 and June 13, 2000. On the very day that Los Santos was first eligible for release from state custody, March 21, the federal authorities took custody of him. The federal indictment did not follow until April 6, 2000.

■ The district court found that there was a "missed opportunity" for a concurrent sentence by the government's delay in prosecuting Los Santos, and therefore departed from the guideline range in order to "credit" Los Santos for the time he served in state custody. Although the district court failed to fully elaborate on its rationale, presumably it was guided, at least in part, by U.S.S.G. § 5G1.3. Subsection (b) states that "If ... the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b) (2000). In *United States v. Fermin,* 252 F.3d 102 (2d Cir.2001), we explained that "when a criminal defendant is imprisoned as a result of his violation of the terms of his parole, the 'offense' that 'results' in his imprisonment is, for the purposes of § 5G1.3(b), the underlying prior offense of conviction, not the conduct violative of his parole conditions." *Id.* at 108 (quoting *United States v. Garcia–Hernandez,* 237 F.3d 105, 110 (2d Cir. 2000)) (internal quotation marks omitted). Thus, Los Santos was in state custody for his 1995 state drug convictions, and not his illegal reentry, which merely formed the basis for his parole violation. Because his

drug conviction was not "fully taken into account" for his offense level for the illegal reentry charge, subsection (b) does not apply.

■ The fallback position is provided by subsection (c), which would apply in Los Santos' case. Under that subsection, the district court could have imposed a concurrent sentence "to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). Although it now is settled that subsection (c) does not allow for "crediting" for time served in the same fashion that subsection (b) does, we have not yet squarely decided whether it is appropriate for a district court to depart because the government's delay in prosecution deprived the defendant of an opportunity for a concurrent sentence under subsection (c). *See Fermin,* 252 F.3d at 109 n. 12 (recognizing possibility of delay could result in divergent sentences).

The district court did indicate that it would have imposed a concurrent sentence if Los Santos had not already served the balance of his state time. That is, had Los Santos been indicted and pleaded guilty while still serving state time, the district court would have imposed a sentence to run concurrently with the state time remaining. Because the federal government waited until Los Santos was discharged from state custody to indict him, the district court seems to have found Los Santos lost his opportunity to receive a concurrent sentence, which took his case out of the heartland. The district court sought to apply a remedy that encompassed the period beginning on the date of Los Santos' arrest by officers of the New York City Police Department (N.Y.PD) on October 13, 1999, which resulted in a departure of fourteen months.

Postponing the issue of whether or not the missed opportunity to serve a concurrent sentence is an acceptable basis for

departure, we will briefly examine the extent to which the district court departed, assuming *arguendo* that departure was permissible.

■■ To the extent the district court "credited" Los Santos with time served from the date of his initial state arrest in New York City, the judge below abused his discretion. This time includes the 54 days that preceded INS's discovery of Los Santos' crime. Los Santos was arrested by NYPD on October 13, 1999, but INS did not discover Los Santos' presence until he was interviewed in the Ulster Correctional Facility on December 6, 1999. Presumably, because Los Santos apparently admitted to the arresting officers that he was here illegally,[1] the district court imputed this knowledge to the INS as of the arrest date. Even if Los Santos did indeed tell the state authorities of his illegal immigration status, we have held that the statute of limitations for the offense of illegal reentry does not begin to run until the alien is found by the INS. *United States v. Rivera–Ventura,* 72 F.3d 277, 282 (2d Cir.1995); *see also United States v. Santana–Castellano,* 74 F.3d 593, 598 (5th Cir.1996) (holding that "previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the **immigration authorities,** and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities can reasonably be attributed to the **immigration authorities**") (emphasis added). The same reasoning ought to be applied here. Even if the arresting NYPD officers were apprised of Los Santos' status, **INS** was not aware of his presence in this country until the INS agent interviewed him on December 6, 1999. Thus, any crediting of time before that date for a

missed opportunity to serve a concurrent sentence was improper.

■■ Similarly, the district court abused its discretion by departing in order to credit Los Santos with the time from his transfer to federal custody on March 21, 2000 to the date of sentencing eight months later. Under 18 U.S.C. § 3585(b)(1), Los Santos is to be credited by the Bureau of Prisons (BOP) for the time he served "in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed." By factoring this eight-month period into the departure, the district court effectively double-credited Los Santos for this time. It is well settled that the credit to which Los Santos is due for time spent in federal custody is to be handled by the BOP and not the sentencing court. *See United States v. Wilson,* 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) ("[Section] 3585(b) does not authorize a district court to compute the credit at sentencing."); *United States v. Luna–Reynoso,* 258 F.3d 111, 117 (2d Cir.2001) ("[T]he credit to be granted a defendant under § 3585(b) for time during which he was held in federal custody prior to sentencing is administered by the Bureau of Prisons."); *Werber v. United States,* 149 F.3d 172, 179 (2d Cir.1998) ("[O]nly the BOP is entitled to give credit for time served prior to the commencement of a sentence."). The portion of the district court's departure that included this eight-month period must therefore be vacated.

■■ What remains of the original fourteen-month downward departure, after subtracting the eight months that will be credited by BOP and the two months before the INS knew of Los Santos' presence, is the four-month period from when

---

1. We note that we can find no evidence in the record that Los Santos made this admission,

especially in light of his use of an alias upon arrest.

the government learned of his presence to the date of the indictment. The government argues that absent some evidence of bad faith or sinister motive in delaying the prosecution, Los Santos was not entitled to be "credited" for his time served based on a "missed opportunity" for a concurrent sentence. The government also points out that it needed time to conduct an investigation and complete fingerprint analysis before it was able to indict Los Santos. The total time from when it found Los Santos in the New York correctional facility to indictment was four months. Moreover, the government argues any delay of prosecution that occurs within the applicable statute of limitations should be deemed presumptively legitimate and is within its prosecutorial discretion. We have previously recognized that "ordinary accidents of acceleration or delay are simply part of the criminal process, in contrast to 'extreme' or 'sinister' delays concocted to increase a sentence." *United States v. Acevedo*, 229 F.3d 350, 356 (2d Cir.2000) (quoting *United States v. Saldana*, 109 F.3d 100, 104 (1st Cir.1997)) (internal quotation marks omitted).

This case is difficult because we recognize that a rule requiring a defendant to show bad faith on the government's part would nearly always prove to be an insurmountable burden for the defendant, even in a case where the delay is extreme. Moreover, such a rule would enable the government to be utterly negligent and careless in its prosecution without giving recourse to a defendant, the only one who would suffer from such negligence. On the other hand, we also acknowledge that the government is certainly entitled to a reasonable amount of time to investigate and gather evidence before indictment, even if state authorities are holding the defendant for other crimes. To be sure, that the government waited to take custody of Los Santos until the very day he was due to be released from state prison at least raises the suspicion of bad motive on the part of the government.

The only one of our sister circuits to have squarely addressed this issue thus far is the Ninth Circuit Court of Appeals. That court, sitting en banc, found that departure due to the "missed opportunity" is appropriate. *United States v. Sanchez–Rodriguez*, 161 F.3d 556, 563–64 (9th Cir. 1998) (en banc). In that case, the court found that, had the government not delayed prosecuting the defendant for illegal reentry after it was notified of his presence seven months before indictment, the defendant would have been entitled to serve ten months of his sentence concurrently. *Id.* at 563 n. 13. There was no allegation of nefarious motive on the part of the government. Nevertheless, the court found that the government's delay was "entirely arbitrary" and that it resulted in a harsher sentence due to the "fortuity of delay" on the government's part. *Id.* at 564. As a result, the court concluded that departure was appropriate.

The First Circuit has also acknowledged that even in the absence of deliberate tampering to increase sentencing, "careless or even innocent delay [could produce] sentencing consequences so unusual and unfair that a departure would be permissible." *Saldana*, 109 F.3d at 104.

■■■ Considering these cases and the policy concerns raised by the government in their brief, we hold that in order for a district court to depart under § 5K2.0 based on a prosecutorial delay that resulted in a missed opportunity for concurrent sentencing, the delay must either have been in bad faith or have been longer than a reasonable amount of time for the government to have diligently investigated the crime involved such that the delay takes the case out of the heartland. Applying this principle to the case at bar, although the government's fortuitous timing raises an eyebrow, it is not enough on its own to

show deliberate manipulation or bad faith on the part of the government. Moreover, four months seems reasonable to us for the government to have investigated Los Santos' crime and to have confirmed his identity. We decline to establish a bright line rule by speculating on how much longer the government could have waited before the delay would have been out of the realm of reasonableness.

Therefore, because the government's delay in prosecuting Los Santos here was for a legitimate reason and was for a reasonable time to accomplish that goal, the remaining four months of the district court's departure must be also vacated and the case remanded for re-sentencing.[2]

Sentence vacated and remanded.

**2.** We suggest to district courts that they endeavor to create a clearer record in the future as to their rationale and basis for departure from the guidelines. This is especially necessary when venturing into an unsettled area of law such as this.