UNITED STATES of America,
Appellee,

v.

Julio Amezquito ACEVEDO, also known as Ramon Rodriguez, also known as Victor Gelarza, Defendant–Appellant.

No. 99–1606.

United States Court of Appeals,
Second Circuit.

Argued: May 26, 2000

Decided: Aug. 25, 2000

Bruce R. Bryan, Syracuse, NY, for defendant-appellant.

Michael S. Kim, Assistant United States Attorney (Mary Jo White, United States Attorney; Jay K. Musoff and Jamie L. Kogan, Assistant United States Attorneys, on the brief), Southern District of New York, New York, NY, for appellee.

Before: McLAUGHLIN and SOTOMAYOR, Circuit Judges, and RESTANI,[*] Judge.

SOTOMAYOR, Circuit Judge:

Julio Amezquito Acevedo appeals from a judgment of conviction and sentence entered on October 26, 1999 by the United States District Court for the Southern District of New York (Jones, J.). Acevedo pled guilty to one count of illegally reen-

---

[*] The Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation.

tering the United States after being deported from the country following a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a), (b)(2).

On appeal, Acevedo's principal argument is that his trial counsel was ineffective because he failed to raise a statute of limitations defense and to investigate adequately the facts and law relating to such a defense. Acevedo contends that his prosecution was time-barred under 18 U.S.C. § 3282, because the indictment was filed more than five years after his reentry into the United States. Acevedo's ineffectiveness of counsel contention raises an issue not yet addressed by this Circuit: when the statute of limitations is triggered for the purposes of 8 U.S.C. § 1326, where an illegal alien accomplishes reentry by providing an invalid green card and his real name to immigration authorities. Because we find that Acevedo's presentation of an invalid green card allowed him to achieve entry "by means of specious documentation that conceal[ed] the illegality of his presence," *United States v. Rivera–Ventura*, 72 F.3d 277, 281 (2d Cir.1995), we hold that the statute of limitations was not triggered at the time he reentered the country, but rather at the time that he was "found in" the United States by immigration authorities. *See id.* at 282. We therefore conclude that the filing of the indictment approximately two-and-a-half years after Acevedo's discovery was timely. For this reason, trial counsel's alleged failure to raise or investigate further a statute of limitations defense could not have prejudiced Acevedo, and, therefore, his ineffective assistance claims on this ground fail. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that a defendant must show actual prejudice to succeed on an ineffective assistance of counsel claim).

Acevedo raises numerous other arguments on appeal, including that: (1) the district court erred in denying his downward departure motions based on the government's delay in commencing prosecution and transferring him to federal custody, and based on the ground that he saved the life of another inmate; (2) the district court's application of the 1998 version of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") rather than the 1991 version in determining his adjusted offense level constituted an ex post facto violation; and (3) his trial counsel provided ineffective assistance by (a) failing to raise a downward departure claim based on Acevedo's alleged mistaken belief that his reentry was not a crime; and (b) neglecting to bring the commentary to § 5G1.3(c) of the 1994 Guidelines to the attention of the district court, which, Acevedo claims, might have rendered the district court more receptive to his downward departure motions. Because we find that each of these claims is also without merit, we affirm the judgment of the district court.

## BACKGROUND

Acevedo, a native of the Dominican Republic, first entered the United States in January 1984. In October 1985, Acevedo pled guilty to manslaughter in New York Supreme Court, New York County, and was sentenced in December 1985 to a term of six to eighteen years' imprisonment. In November 1990, he was deported to the Dominican Republic in connection with the manslaughter conviction. Acevedo apparently failed to surrender his green card to the Immigration and Naturalization Service ("INS") upon deportation, although such surrender is routinely required. *See United States v. Gay*, 7 F.3d 200, 200–01 (11th Cir.1993); *United States v. Almonte*, No. 98 Cr. 666 (JFK), 1998 WL 782023, at *2 (S.D.N.Y. 1998); Aliens and Nationality, 8 C.F.R. § 246.9 (2000) (requiring surrender of green card upon rescission of permanent resident status); *id.* § 247.14 (same).

Acevedo reentered the United States on June 6, 1991, at Miami International Airport, using his real name and presenting

his invalid green card, his social security card, and his Dominican passport to the immigration authorities. In March 1993, he was arrested in New York County, although the circumstances of that arrest are unclear from the record. In April 1994, Acevedo was again arrested by New York State authorities after selling heroin to an undercover police officer. He pled guilty to attempted criminal sale of a controlled substance and, in March 1995, was sentenced to a term of three to six years' imprisonment.

Between May 1, 1995 and June 21, 1995, while Acevedo was serving his sentence, New York State's Department of Correctional Services sent three letters to the INS notifying the agency of Acevedo's incarceration, informing it of the possibility that Acevedo was an illegal alien, and inquiring whether it would be seeking Acevedo's deportation. On September 30, 1997, the United States Attorney for the Southern District of New York filed an indictment charging Acevedo with one count of illegally entering, attempting to enter, and being "found in, the United States subsequent to his conviction for the commission of an aggravated felony, ... without having obtained the express consent of the Attorney General of the United States" in violation of 8 U.S.C. § 1326(a), (b)(2).[1] Def.-Appellant's App. at 7 (Indictment, 97 Cr. [1028–1(BSJ) ] ). Acevedo was transferred to federal custody on October 15, 1998.

Acevedo pled guilty as charged, without a plea agreement, in proceedings held be-fore the district court on April 16, 1999 and May 19, 1999. In Acevedo's Presentence Investigation Report, the Probation Office determined that his adjusted offense level was 21, his Criminal History Category was IV, and his Guidelines sentencing range was thus fifty-seven to seventy-one months of imprisonment. At sentencing proceedings held on October 4, 1999, the district court adopted the Probation Office's proposed Guidelines range, and, after denying Acevedo's downward departure motions, imposed a prison sentence of fifty-seven months to run concurrently with the remainder of his state sentence, followed by three years' supervised release, and a mandatory assessment of $100. The district court imposed a sentence at the lower end of the Guidelines range in consideration of Acevedo's successful efforts to prevent another inmate's suicide. Judgment was entered on October 26, 1999, and this appeal followed.

## DISCUSSION

### I. *Statute of Limitations*

Acevedo contends on appeal that his prosecution was time-barred. As a result, he claims that his trial counsel was ineffective for failing to raise this defense before the district court and for neglecting to investigate adequately the implications of Acevedo's presentation of his real name to immigration authorities upon reentry.

The time for prosecuting violations of 8 U.S.C. § 1326 is set forth in 18 U.S.C. § 3282, which provides generally

---

1. The statute provides in pertinent part:
    (a) In general
    Subject to subsection (b) of this section, any alien who-
    (1) has been ... excluded, deported, or removed ... [from] the United States ... and thereafter
    (2) enters, attempts to enter, or is at any time found in, the United States, unless ... the Attorney General has expressly consented to such alien's reapplying for admission; ...,
    shall be fined under Title 18, or imprisoned not more than 2 years, or both.

    (b) Criminal penalties for reentry of certain removed aliens
    Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection–
    ...
    (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both[.]

that "no person shall be prosecuted ... for any offense, not capital, unless the indictment is found ... within five years next after such offense shall have been committed." 18 U.S.C. § 3282; *see also United States v. Rivera–Ventura*, 72 F.3d 277, 280 (2d Cir.1995) (discussing applicability of § 3282). The statute of limitations in criminal cases begins to run when the crime is "complete." *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). An offense committed under § 1326 is complete upon the occurrence of one of three events: the alien (1) enters; (2) attempts to enter; or (3) is "found in" the United States. 8 U.S.C. § 1326(a)(2). Acevedo claims that the statute of limitations in his case was triggered when he "entered" or "attempted to enter" the United States on June 6, 1991, and that the September 30, 1997 indictment was time-barred under 18 U.S.C. § 3282.

■ This Court has held that an alien commits the offense of being "found in" the United States if he enters the country "unlawfully after making a surreptitious border crossing that conceals his presence," or ."enter[s] through a recognized port by means of specious documentation that conceals the illegality of his presence...." *Rivera–Ventura*, 72 F.3d at 281 (citations omitted); *see also United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir.1993) (finding violation of "found in" provision where defendant accomplished reentry using documentation with fictitious name). The commission of the offense is not complete, however, "until the authorities both discover the illegal alien in the United States, ... and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence[.]" *Rivera–Ventura*, 72 F.3d at 282 (citations omitted); *see also United States v. Gomez*, 38 F.3d 1031, 1034–35 (8th Cir.1994) ("[A] 'found in' violation ... is not complete until the alien is 'discovered' by immigration authorities."). Because Acevedo returned to the United States at a recognized port of entry—Miami International Airport—the resolution of his statute of limitations claim hinges on the question of whether the presentation of an invalid green card and his real name to immigration authorities constituted .entry by means of specious documentation.

■ We find that a deportee who gains readmission to the United States by presenting an invalid travel document to the immigration authorities does so "by means of specious documentation that conceals the illegality of his presence...." *Rivera–Ventura*, 72 F.3d at 281. Because a green card is an accepted means by which an alien may demonstrate the legality of his admission, *see, e.g.*, 8 C.F.R. §§ 211.1(a)(2), 235.1(d), a deportee's presentation of an invalid green card, particularly when accompanied by an apparently valid passport, does "not place the INS on notice that his presence in the United States [is] illegal," *Almonte*, 1998 WL 782023, at *3, even if the alien uses his real name. *See Gay*, 7 F.3d at 200–02 (upholding conviction of deportee under "found in" provision, where deportee reentered United States at Kennedy International Airport with passport that he had failed to present to INS upon deportation, thus preventing agency from noting his deportation in the passport); *Almonte*, 1998 WL 782023, at *2 (observing, in *dicta*, that deportee who reentered country through Newark Airport by presenting Dominican passport and invalid green card would violate "found in" provision). Thus, Acevedo's reentry violated the "found in" provision of § 1326.

Although Acevedo claims that immigration authorities, through the "exercise of diligence," *Rivera–Ventura*, 72 F.3d at 281, should have discovered his violation at the time of reentry, Acevedo does not suggest that immigration authorities had available any equipment enabling them to conduct the necessary investigation. *See Almonte*, 1998 WL 782023, at *3 (observing that border officials in 1991—the year

of Acevedo's illegal reentry—lacked the equipment to detect the prior deportation of an illegal reentrant). Therefore, we decline to reach the issue of diligence here.

Because Acevedo violated the "found in" provision of § 1326, the statute of limitations began to run not at the time of Acevedo's reentry, but only upon the INS' subsequent discovery of his presence in the United States. *See Rivera–Ventura,* 72 F.3d at 281–82. INS discovered Acevedo's presence in May 1995, as the government concedes, when the Department of Correctional Services sent the first of three letters notifying INS of Acevedo's incarceration. Therefore, the September 1997 filing of the indictment occurred well within the five year statute of limitations.

■■ For this reason, Acevedo cannot possibly prove that his trial counsel was ineffective for failing to raise a statute of limitations defense. "[T]o prevail on an ineffective assistance of counsel claim, a defendant must first show that his counsel's performance was deficient and must then show that the deficiency caused actual prejudice to his defense." *Clark v. Stinson,* 214 F.3d 315, 321 (2d Cir.2000) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). In order to demonstrate prejudice, the defendant must show "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). In light of our holding, Acevedo cannot show that the outcome of his case would have been different had trial counsel raised a statute of limitations defense or investigated the facts and law relating to Acevedo's usage of his correct name at the border. We therefore find that Acevedo's arguments are without merit.

## II. *Remaining Claims*

### A. *Downward Departure Motions*

■ A district court's refusal to grant a downward departure is not appealable unless the court committed an error of law or misapprehended its power to depart. *See United States v. Napoli,* 179 F.3d 1, 18 (2d Cir.1999); *United States v. Fernandez,* 127 F.3d 277, 282 .(2d Cir.1997). Under this standard, we find that we may not review the district court's denial of Acevedo's downward departure motions.

■ Acevedo contends that the district court erred in holding that it lacked the authority to grant a downward departure under U.S.S.G. § 5K2.0 (1998) on the basis that Acevedo prevented the suicide of another inmate. The district court found that Acevedo's action was a charitable "good work" falling within U.S.S.G. § 5H1.11 (1998), and as such was not relevant to the determination of whether a departure was warranted. The court also explicitly stated that even assuming that Acevedo's charitable effort was a relevant criterion, his act was not so exceptional as to warrant a departure from the heartland situations covered by the Guidelines. In light of this alternative holding, which renders moot the question whether the district court misapprehended its authority to depart, the district court's denial of the motion for departure is not appealable. *See Napoli,* 179 F.3d at 18 (declining to review the district court's finding that it lacked the authority to depart under the Guidelines, where the district court "stated that even if it had authority, it would not exercise it as a matter of discretion").

■ Acevedo also contends that the district court erred in holding that the federal government's alleged delay in commencing his prosecution and transferring him to federal custody did not warrant a downward departure. Specifically, Acevedo claims that the district court misapplied *United States v. Saldana,* 109 F.3d 100 (1st Cir.1997), in denying his motion. At sentencing, the district court cited *Saldana* for the proposition that "ordinary accidents of acceleration or delay" are simply part of the criminal process, in contrast to "extreme" or "sinister" delays concocted to increase a sentence. *Saldana,* 109 F.3d at

104. The district court then observed that Acevedo was unable to allege that the delay in his case was either deliberate or nefarious. Because the district court's reading and application of *Saldana* were accurate, this claim also lacks merit.

■ Acevedo also raises an ineffective assistance of counsel claim in connection with this downward departure argument, contending that trial counsel should have brought to the district court's attention a Guideline provision in effect in 1995, the time when Acevedo was "found in" the United States. Specifically, Acevedo claims that the commentary to U.S.S.G. § 5G1.3(c) (1994) supports the imposition of his federal sentence to run concurrently with his state sentence, and that if trial counsel had brought this commentary to the trial court's attention, the district court would have been more receptive to his departure motion.

The commentary to which Acevedo refers states that "the court shall impose a consecutive sentence to the extent necessary to fashion a sentence resulting in a reasonable incremental punishment for the multiple offenses," and observes that "a consecutive sentence is not required" "where such incremental punishment can be achieved" through the imposition of a concurrent sentence. *Id.*, application note 3. The commentary also leaves to the district court's discretion whether a downward departure is an appropriate means to achieve a reasonable incremental punishment. *See id.* In contrast, § 5G1.3(c) of the 1998 U.S.S.G. and its accompanying application notes do not contain any language authorizing the district court to grant a downward departure in order to achieve a reasonable incremental punishment. The provision only allows the district court, at its discretion, to impose a concurrent, rather than consecutive, sentence. *See id.* & application notes 3–5.

Acevedo, however, does not suggest what a reasonable incremental punishment for the instant offense should have been, and therefore fails to demonstrate why a downward departure was warranted. Acevedo's claim is speculative, particularly in light of the district court's decision, announced after denial of his downward departure motion, to impose a federal sentence running concurrently rather than consecutively with the remainder of his state sentence. Because Acevedo has failed to show what an appropriate sentence would have been, he has not demonstrated that counsel's failure to invoke the commentary caused him prejudice. Consequently, his ineffective assistance of counsel claim on this ground also fails. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

### B. *Ex Post Facto Claim*

■ Acevedo asserts that the district court erred by applying the Guidelines in effect at the time of his sentencing to calculate his adjusted offense level, and that trial counsel's failure to object to the alleged error constituted ineffective assistance under *Strickland*. Because the district court committed no error, these claims also fail.

In June 1991, when Acevedo reentered the United States, the Guideline applicable to illegal reentry provided for a base offense level of eight and a four-level enhancement "[i]f the defendant previously was deported after sustaining a conviction for a felony...." U.S.S.G. § 2L1.2 (1990). Commentary to the Guideline further provided that if the conviction was for "an aggravated felony ... an upward departure [might] be warranted." *Id.*, application note 3. Effective November 1, 1991, a new provision was enacted to require a 16-level enhancement "[i]f the defendant previously was deported after a conviction for an aggravated felony...." U.S.S.G. § 2L1.2(b)(2) (1991). This version of the Guideline was in effect at the time Acevedo was "found in" the United States, *see* U.S.S.G. § 2L1.2(b)(2) (1994), and identical language was contained in the Guideline in effect at the time of Acevedo's sentencing, *see* U.S.S.G. § 2L1.2(b)(1)(A) (1998).

In general, defendants are sentenced under the Guidelines in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A). However, an ex post facto violation may arise if those Guidelines would impose a more onerous punishment than the Guidelines in effect when the offense was committed. *See Whittaker*, 999 F.2d at 40 (citing *United States v. Rodriguez*, 989 F.2d 583, 587 (2d Cir.1993); *United States v. Paccione*, 949 F.2d 1183, 1204 (2d Cir.1991)). Because the district court did not err in its decision to apply the 1998 Guideline, which was no more stringent than the provision in effect when the commission of Acevedo's offense was complete, Acevedo is unable to show either an ex post facto violation or any prejudice resulting from trial counsel's failure to object to the court's decision. Therefore, we reject Acevedo's claims on these grounds as well.

### C. *Mens Rea*

Finally, Acevedo contends that his trial counsel was ineffective because he failed to move for a downward departure based on Acevedo's allegation that he was unaware he was committing a crime when he reentered the United States. This claim is baseless. First, there is no defense of good faith or mistake under 8 U.S.C. § 1326. *See United States v. Torres-Echavarria*, 129 F.3d 692, 697 (2d Cir. 1997) (citing *United States v. Champegnie*, 925 F.2d 54, 55 (2d Cir.1991)). Second, it is unnecessary to show specific intent to prove a violation of § 1326. *See United States v. Ortiz-Villegas*, 49 F.3d 1435, 1437 (9th Cir.1995); *United States v. Newton*, 677 F.2d 16, 17 (2d Cir.1982) (per curiam). Consequently, Acevedo cannot prove that trial counsel's failure to move for a downward departure on this basis altered the outcome of his sentencing.

### CONCLUSION

Because we have examined all of Acevedo's claims and found them to be without merit, we affirm the judgment of the district court in its entirety.