287 F.3d 47
 UNITED STATES OF AMERICA, Appellee,
v.
Nelson MERCEDES, aka "Nelson Manuel Feireira," aka "Jose P. Roger," aka "Jose Herman," aka "Nesol Mersede," aka "Jayavo Figueroa," aka "Nelson Manuel Ferrara," aka "Jesus Rodriguez," aka "Nelson Ferrera," aka "Robert A. Figueroa," aka "Roberto Figueroa," aka "Ramon Moreno Ramirez," aka "Moreno Ramirez Ramon," aka "John Simon Ramirez," aka "Nelson Manuel Mercedes," aka "Ramon Morenos-Ramirez," aka "Jose Rodriguez," Defendant-Appellant.
 Docket No. 01-1170.
 United States Court of Appeals, Second Circuit.
 Argued: January 3, 2002.
 Decided: April 11, 2002.
 
 COPYRIGHT MATERIAL OMITTED Neil B. Checkman, New York, NY, for Defendant-Appellant Mercedes.
 Marc A. Weinstein, Assistant United States Attorney, New York, NY; (Mary Jo White, United States Attorney for the Southern District of New York; Mark D. Harris, Assistant United States Attorney, on the brief), for Appellee.
 Before: FEINBERG and KATZMANN, Circuit Judges, and GLEESON, District Judge.*
 FEINBERG, Circuit Judge.
 
 
 1
 Defendant-appellant Nelson Mercedes appeals from a judgment of conviction entered in March 2001 by the United States District Court for the Southern District of New York (Berman, J.). In December 1999, Mercedes pleaded guilty to one count of illegally reentering the United States after having been deported, in violation of 8 U.S.C. § 1326(a), (b)(2). Mercedes thereafter moved to withdraw his plea and dismiss the indictment on several grounds, including that the indictment was untimely. Also, prior to sentencing, defense counsel argued that Mercedes should not be subjected to a 16-level enhancement under the Sentencing Guidelines for an aggravated felony conviction that was not mentioned in the indictment. The district court rejected these arguments and sentenced Mercedes principally to 77 months imprisonment. For the reasons stated below, we affirm the judgment of the district court.
 
 I. Background
 
 2
 The facts relevant to this appeal are as follows:
 
 
 3
 In January 1991, Mercedes was deported from the United States to the Dominican Republic after serving a sentence for a 1990 conviction in the United States District Court for the District of Puerto Rico for using an altered United States passport, in violation of 18 U.S.C. § 1543. Prior to his deportation, Mercedes had also been convicted of several other offenses, including a 1984 conviction in New York Supreme Court for second degree robbery and a 1987 conviction in the Southern District of New York for possession and distribution of cocaine, in violation of 21 U.S.C. §§ 812, 814(a)(1), 841(b)(1)(c).
 
 
 4
 Around March 1991, without the Government's permission or knowledge, Mercedes illegally reentered the United States. In August 1993, Mercedes was arrested by the New York City Police Department on a state homicide charge. At the time of his arrest, Mercedes used the alias "Robert Figueroa," and a false date of birth was either given to or obtained by state officials. Mercedes subsequently pleaded guilty to second degree manslaughter and was sentenced in May 1997 to four to eight years imprisonment.
 
 
 5
 In August 1996, the Immigration and Naturalization Service (INS) first learned of Mercedes's presence in the United States when they interviewed him at Rikers Island Correctional Facility, where he was awaiting sentencing on the state homicide charge. In December 1996, after reviewing its files, the INS determined that Mercedes had reentered the country illegally after his 1991 deportation. In March 1997, the Government filed a complaint against Mercedes in the Southern District of New York, charging him with illegally reentering the United States after having been deported subsequent to a felony conviction. The complaint named only Mercedes's 1984 robbery conviction as the prior felony. The same day, a federal arrest warrant based on that complaint was issued.
 
 
 6
 In February 1999, Mercedes was released from state prison and was immediately arrested by INS agents on the 1997 warrant. In March 1999, Mercedes was indicted in the Southern District on one count of illegally entering and being "found in" the United States after having been deported "subsequent to a conviction for the commission of an aggravated felony, to wit, a conviction on August 31, 1984, in the Supreme Court for the State of New York ... for robbery in the second degree," in violation of § 1326(a), (b)(2). Like the March 1997 Government complaint, the indictment did not refer to any prior felony other than the robbery.
 
 
 7
 In December 1999, Mercedes pleaded guilty before Magistrate Judge Ronald L. Ellis. Prior to the plea proceedings, the Government provided Mercedes with a Pimentel letter setting forth the Goverment's view of Mercedes's sentencing exposure. See United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir.1991) (suggesting that the Government "inform defendants, prior to accepting plea agreements, as to the likely range of sentences that their pleas will authorize under the Guidelines"). The Pimentel letter stated that the illegal reentry charge carried a maximum term of 20 years imprisonment. The letter also calculated Mercedes's expected sentencing range to be 77 to 96 months. The calculation included a 16-level enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because Mercedes was deported subsequent to an "aggravated felony" conviction. The calculation also took into account Mercedes's criminal history, and the letter listed seven separate crimes committed by Mercedes. Those crimes included both the 1984 state robbery and 1987 federal narcotics convictions.[1] The Pimentel letter did not indicate which of the seven offenses constituted an aggravated felony.
 
 
 8
 At his plea allocution before Magistrate Judge Ellis, Mercedes expressly admitted to reentering the United States, without permission, after having been deported. He also admitted that he knew reentering the country was wrong, and said that he was "in this country already so [he was] guilty." During the hearing, the magistrate judge advised Mercedes, among other things, that the offense for which he was charged carried a maximum penalty of 20 years imprisonment. The magistrate judge also told Mercedes of the applicability of the Sentencing Guidelines, of the district court's ability to depart from the Guidelines "under certain limited circumstances," and of the requirement, under the Guidelines, that the district court "take into account a number of factors, including... any criminal history." Mercedes indicated that he understood all of this information.
 
 
 9
 The magistrate judge further inquired, "Do you understand that if the sentence is more severe than you expected, you'll be bound by your guilty plea and will not be permitted to withdraw it?" Mercedes responded that he understood and that he had been informed of the Government's sentencing calculations in its Pimentel letter, although he stated that he did not agree with the letter. Mercedes also specified that he would "plead guilty to illegal re-entry only." The Government explained that it understood this qualification to mean that Mercedes was "leaving open [the] sentencing issue as to whether or not he was deported after an aggravated felony." The magistrate judge thereafter found Mercedes's plea to be knowing and voluntary, and he recommended that Judge Berman accept the plea.
 
 
 10
 Prior to the district court's acceptance of his guilty plea, Mercedes filed various pro se motions to withdraw his plea and dismiss the indictment. The motions alleged violations of the Interstate Agreement on Detainers Act, 18 U.S.C. app., § 2. Art. III; the Speedy Trial Act, 18 U.S.C. §§ 3161-3174; Fed.R.Crim.P. 48(b); the Sixth Amendment; and 18 U.S.C. § 3282 (the five-year statute of limitations applicable to a § 1326 offense). In June 2000, Judge Berman denied the motions without prejudice because Mercedes was represented by counsel and could therefore not proceed pro se.[2] Mercedes was invited to resubmit the motions either through counsel or, if he elected to proceed without counsel, by appearing pro se. The district court nevertheless noted that it would have denied the motions on the merits anyway if it had considered them. Later in the same proceeding, Judge Berman accepted the magistrate judge's recommendation to accept Mercedes's guilty plea, and the plea was entered.
 
 
 11
 In August 2000, Mercedes, proceeding pro se, acted upon the district court's suggestion and filed a new motion to withdraw his plea and dismiss the indictment because the prosecution was untimely.[3] With one exception, the other grounds alleged in his previous motions were not renewed.[4] In October 2000, the district court denied the motion, finding the statute of limitations claim without merit. Citing United States v. Acevedo, 229 F.3d 350 (2d Cir.), cert. denied, 531 U.S. 1027, 121 S.Ct. 602, 148 L.Ed.2d 514 (2000), the district court ruled that the statute of limitations for an illegal reentry offense does not begin to run until the INS discovers the alien's presence in the United States. The district court held that the 1999 indictment was filed within the five-year statute of limitations because (a) Mercedes's 1993 state arrest and fingerprinting did not place the INS on notice of his renewed presence in the country, and (b) the INS first found Mercedes in August 1996 after interviewing him in state prison. The district court further noted that there was no basis to permit withdrawal of Mercedes's guilty plea because Mercedes entered the plea "knowingly, intelligently, and voluntarily," and he "never denied his guilt" of the crime.
 
 
 12
 Also in October 2000, the Probation Department prepared a Pre-Sentence Report (PSR) in advance of Mercedes's sentencing. The PSR, like the Government's Pimentel letter, recommended a 16-level enhancement for deportation after a conviction for an aggravated felony. The PSR, unlike the Pimentel letter but like the complaint and indictment, identified the 1984 robbery conviction as the aggravated felony. The PSR also, like the Pimentel letter, listed Mercedes's other criminal convictions in its criminal history section.
 
 
 13
 Mercedes, again represented by counsel, thereafter filed objections to the PSR. Among other things, defense counsel argued that Mercedes's 1984 robbery conviction did not qualify as an aggravated felony. Before September 1996, aggravated felonies were defined, for purposes of the illegal reentry statute, to include crimes of violence for which the term of imprisonment was at least five years. See Pub.L. No. 104-208, § 321(a).[5] Mercedes's 1984 robbery conviction, however, resulted in a sentence of only 18 to 54 months. Because the change in legislation occurred after the completion of Mercedes's illegal reentry crime (the indictment charges Mercedes with conduct from "about March 1991, up to and including in or about August 1996"), defense counsel contended that the old law applied, that the robbery conviction was therefore not an aggravated felony, and that Mercedes should receive only a four-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(D), rather than 16 levels.
 
 
 14
 In response to defense counsel's objections, the Probation Department revised the PSR to eliminate any reliance on the 1984 robbery conviction as an aggravated felony. The revised PSR nevertheless continued to recommend a 16-level enhancement, because Mercedes's 1987 conviction for possession and distribution of cocaine qualified as an aggravated felony even under the previous law.
 
 
 15
 Defense counsel thereafter objected to the Government's reliance on the uncharged 1987 narcotics offense as an aggravated felony. Counsel argued that it would be a violation of the due process and notice requirements of the Fifth and Sixth Amendments, and the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), if Mercedes was sentenced based on an aggravated felony not identified in the indictment. Additionally, defense counsel maintained that the district court should find that Mercedes was deported after the commission of a non-aggravated felony, and that a lower maximum sentence should therefore apply pursuant to 8 U.S.C. § 1326(b)(1). Defense counsel also renewed Mercedes's argument that the indictment was barred by the statute of limitations.
 
 
 16
 In March 2001, the district court rejected Mercedes's argument on the aggravated felony issue and adopted the recommendations of the PSR. Citing Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) and United States v. Latorre-Benavides, 241 F.3d 262 (2d Cir.2001) (per curiam), cert. denied, 532 U.S. 1045, 121 S.Ct. 2013, 149 L.Ed.2d 1014 (2001), the district court ruled that Apprendi did not require a jury finding to apply the 16 level enhancement in this case for a prior aggravated felony. The district court also held, once again, that the indictment was timely because the statute of limitations did not begin to run until August 1996.[6] Mercedes was then sentenced to 77 months imprisonment.
 
 II. Discussion
 
 17
 On appeal, Mercedes argues that (a) the indictment should have been dismissed as time-barred, and (b) the district court should have allowed him to withdraw his guilty plea, and this Court should vacate the plea pursuant to Fed.R.Crim.P. 32(e), because he was not properly notified that his sentence could depend on a prior conviction for an aggravated felony other than the one erroneously specified in the indictment. He also seeks to preserve his right to argue that, under Apprendi, his sentence may not reflect an enhancement based on a prior conviction neither charged in the indictment nor admitted in his plea.[7]
 
 A. Timeliness of the Indictment
 
 18
 Section 1326 prescribes criminal penalties for any alien who has been deported and thereafter "enters, attempts to enter, or is at any time found in" the United States without the express consent of the Attorney General. § 1326(a)(2) (emphasis added). As is the general rule for non-capital federal offenses, an indictment charging a violation of § 1326 must be handed down "within five years next after such offense shall have been committed." 18 U.S.C. § 3282 (2000); see also United States v. Rivera-Ventura, 72 F.3d 277, 280 (2d Cir.1995). This five-year limitations period shall not be extended "[e]xcept as otherwise expressly provided by law." § 3282.
 
 
 19
 Statutes of limitations in criminal cases normally begin to run when the crime is "complete." Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970); Acevedo, 229 F.3d at 355. The commission of the offense of being "found in" the United States in violation of § 1326(a) — the offense with which Mercedes was charged — is complete when "the authorities both discover the illegal alien in the United States ... and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence...." Rivera-Ventura, 72 F.3d at 282 (citations omitted).
 
 
 20
 Mercedes argues that the district court should have dismissed the 1999 indictment against him as time-barred, because it was filed more than five years after the INS should have "found" him in the United States. Mercedes contends that, using "diligence typical of law enforcement authorities," the INS could have learned of his illegal presence in the country shortly after he was arrested on the state homicide charge in 1993, when his fingerprints were taken and a "rap" sheet was generated (under the name "Robert A. Figueroa"). Mercedes asserts that the "rap" sheet should have put any reasonably diligent official on notice of Mercedes's illegal presence because it (a) accurately reported Mercedes's place of birth (the Dominican Republic) and birthdate,[8] (b) listed the various other names he had used in the past, prominently led by "Nelson Mercedes," and (c) chronicled an offense history that included among Mercedes's past charges a "poss[ible] viol[ation] of immigration laws" in 1986, and a reported "illegal entry" and "use of altered U.S. passport" in 1990. Therefore, according to Mercedes, law enforcement officials in 1993 had all the information they needed to identify him as a previously deported alien, and the delay until the 1999 indictment was unreasonable.
 
 
 21
 There is no dispute that the INS first physically located Mercedes at Rikers Island in August 1996 and ultimately determined that his presence in the United States was illegal in December 1996. Thus, applying the test annunciated in Rivera-Ventura, we must decide whether the INS should have discovered the illegality of Mercedes's presence earlier, using diligence typical of law enforcement authorities.
 
 
 22
 We hold that the INS need not have "found" Mercedes earlier than 1996 for purposes of the five-year statute of limitations for a § 1326 offense. First of all, Mercedes used a false name upon his 1993 arrest by state authorities. While it is true that the name "Nelson Mercedes" appeared on the "rap" sheet generated by the state, at least 11 other aliases appeared on the same report.[9] It is hardly unreasonable to expect that the "rap" sheet's listing of multiple false names, as well as different birthdates and places of birth, would delay INS officials from discovering that Mercedes had been deported in 1991. Moreover, it is difficult not to find Mercedes's claim regarding the delay disingenuous when he was the one who attempted to deceive law enforcement officials by concealing his true identity. Cf. United States v. Whittaker, 999 F.2d 38, 42 (2d Cir.1993) (there was "no way the INS could have identified [defendant who surreptitiously entered United States using fictitious name] as a previously deported alien at the time of his reentry").
 
 
 23
 Furthermore, if any authority was on notice of Mercedes's illegal presence in the United States in 1993, it was the New York State Department of Corrections, not the INS. Mercedes essentially asks us to adopt a rule that would make the INS responsible for any immigration-related information discovered in state investigations of the hundreds of thousands of prisoners in state custody at any given time. See Prisoners in 2000, Bureau of Justice Statistics Bulletin (U.S. Dep't Justice), Aug. 2001, at 1 (reporting 1,025,624 total prisoners under the jurisdiction of state correctional authorities in 1995 and 1,236,476 state inmates in 2000); Prisoners in 1994, Bureau of Justice Statistics Bulletin (U.S. Dep't Justice), Aug. 1995, at 1 (reporting 880,857 state inmates in 1993). Given Mercedes's attempts to deceive, the procedural mechanisms in place and the tools available to the INS in 1993,[10] we cannot say that the INS's efforts fell short of the "diligence typical of [federal immigration] law enforcement authorities," as discussed in Rivera-Ventura, 72 F.3d at 281-82. See also Acevedo, 229 F.3d at 354, 356 (holding that, despite arrest by New York State authorities in 1993 and 1994, statute of limitations for "found in" offense did not begin to run until state correctional officials notified the INS of alien's incarceration in 1995).
 
 
 24
 We therefore hold that the 1999 indictment was timely.[11] Accordingly, the district court did not err in so ruling, nor did it abuse its discretion in denying Mercedes's motion to withdraw his guilty plea on the statute of limitations ground.[12]
 
 B. The "Aggravated Felony" Enhancement
 
 25
 Section 1326(a) provides a maximum penalty of two years imprisonment for illegal reentry. Section 1326(b), however, increases the maximum prison sentence to 10 years for aliens "whose removal was subsequent to a conviction for commission of ... a felony," and to 20 years for aliens who committed "an aggravated felony." 8 U.S.C. § 1326(b)(1), (b)(2) (1999). Mercedes's sentence of 77 months imprisonment included a 16 level enhancement due to his commission of an aggravated felony — the 1988 federal narcotics offense — that was not named in the indictment.
 
 
 26
 On appeal, Mercedes argues that the district court should have granted his motion to withdraw his guilty plea once the court learned that the indictment mistakenly specified a prior conviction — the 1984 state robbery offense — as an aggravated felony, when in fact it was not. Mercedes asserts that he "plainly knew" at the time of his guilty plea that the robbery conviction was not an aggravated felony under applicable law. He points out that he told the district court he would "only plead guilty to illegal re-entry," a limitation the Government understood as "leaving open that sentencing issue as to whether or not he was deported after an aggravated felony." Mercedes argues that he did not know that the Government could "substitute" another prior aggravated felony conviction at the time of sentencing, and that its ability to do so was far from self-evident, particularly since the indictment specified the aggravated felony on which his culpability would depend. Therefore, Mercedes contends, his plea was not knowing and voluntary, and he did not receive "real notice of the true nature of the charge against him," Henderson v. Morgan, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (quoting Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)), as required by Fed.R.Crim.P. 11(c)(1).
 
 
 27
 To the extent that Mercedes claims that the district court erred by not allowing him to withdraw his guilty plea due to the indictment's failure to correctly state an aggravated felony, we hold that the district court could not have so erred because Mercedes never moved to withdraw his plea on that ground. The record shows that Mercedes did express his disagreement with the sentencing calculations at his plea, in pre-sentence papers, and again at sentencing. However, despite filing multiple motions to withdraw his guilty plea on various bases, including the statute of limitations claim discussed in II-A above, Mercedes never requested similar relief due to the error in the indictment.[13] Rather, his arguments below regarding the indictment error were focused solely on obtaining a reduced sentence. Because Mercedes made a strategic choice regarding the type of relief to seek below, he cannot successfully argue in this Court that the district court erroneously failed to allow him to withdraw his plea on the aggravated felony ground. See United States v. Yu-Leung, 51 F.3d 1116, 1122 (2d Cir.1995) ("If [a] party consciously refrains from objecting as a tactical matter, then that action constitutes a true `waiver,' which will negate even plain error review.").
 
 
 28
 Even if Mercedes had not waived his right to withdraw his plea on the aggravated felony ground, his claim that his plea should be vacated because it was not knowing and voluntary is without merit. We reject Mercedes's argument that the district court violated Fed R.Crim. P. 11(c)(1) by not advising him before his plea that the Government could, for purposes of sentencing, "substitute" a different aggravated felony for the one incorrectly listed in the indictment. Rule 11 "sets forth requirements for a plea allocution and `is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice....'" United States v. Andrades, 169 F.3d 131, 133 (2d Cir.1999) (quoting United States v. Renaud, 999 F.2d 622, 624 (2d Cir.1993) (citations and quotations omitted)). Rule 11(c)(1) provides that, before accepting a guilty plea, a district court must inform the defendant personally of, and determine that the defendant understands,
 
 
 29
 "the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense...."
 
 
 30
 The record belies Mercedes's contention that the district court did not fully comply with the Rule. Mercedes was told the nature of the charges, the maximum penalty ("20 years imprisonment, three years supervised release, a $250,000 fine, and a $100 special assessment"), and the effect of a supervised release term, and he indicated that he understood each. He was told of the applicability of the Sentencing Guidelines and of the district court's ability to depart from the Guidelines "under certain limited circumstances." He was also asked if he understood that, under the Guidelines, the district court "would be required to take into account a number of factors, including the actual conduct in which you engaged, any victims of the offense, the role you played in the offense, whether or not you have accepted responsibility for your acts, whether you have any criminal history and whether or not you have engaged in any obstruction of justice," (emphasis added) to which he responded, "Yes."
 
 
 31
 Thus, we believe that the district court advised Mercedes of all the relevant elements required by Rule 11(c)(1), and that he received "real notice of the true nature of the charge against him." Henderson, 426 U.S. at 645, 96 S.Ct. 2253. Most significantly, Mercedes was specifically told that the court would be required to take any criminal history of his into account at sentencing. Having indicated his understanding of that advice at the time of his plea, he cannot now complain that he did not know that an aggravated felony that he had committed, other than the 1984 robbery offense, would be factored into his sentence. We therefore agree with the district court that Mercedes's plea was knowing and voluntary, and we decline to vacate it pursuant to Fed.R.Crim.P. 32(e).[14]
 
 
 32
 Finally, Mercedes seeks to preserve his right to argue that his sentence may not reflect an enhancement based on a prior conviction neither charged in the indictment nor admitted in his plea. Mercedes admits that this argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In that case, the Supreme Court held that subsection (b) of § 1326 was a penalty provision which "simply authorizes a court to increase the sentence for a recidivist" and did not define a separate crime. Id. at 226, 118 S.Ct. 1219. Therefore, "neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment." Id. at 226-27, 118 S.Ct. 1219. In Apprendi v. New Jersey, the Supreme Court stated that it was "arguable that Almendarez-Torres was incorrectly decided," but ultimately decided "not [to] revisit it." 530 U.S. 466, 489-90, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Almendarez-Torres thus stands as a "narrow exception" to the general rule announced in Apprendi that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348; see also United States v. Latorre-Benavides, 241 F.3d 262, 264 (2d Cir.2001) (holding that the issue of whether § 1326(b)(2) sets out a distinct offense from § 1326(a) is "squarely governed by Almendarez-Torres and is foreclosed"). Thus, under present law, the district court committed no error by enhancing Mercedes's sentence based on an uncharged prior conviction.
 
 
 33
 Judgment affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable John Gleeson, United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Mercedes's other state offenses involved possession of stolen property (two convictions), and unauthorized use of a vehicle (one conviction). As noted above, he was also convicted of manslaughter (state offense) and of using a fraudulent passport (federal offense)
 
 
 [2]
 Due to apparent dissatisfaction with his legal representation, Mercedes requested counsel substitutions on at least three occasions. His current attorney is his fourth appointed counsel in this matter. He has also proceeded pro se at times
 
 
 [3]
 At its outset, the August 2000 motion alleged that "defense counsel in this matter was grossly ineffective and coerced petitioner in pleading guilty[,][f]or this is a case that is barred from prosecution due to the statute of limitation[s]." The remainder of the motion, however, focused on the merits of the statute of limitations issue rather than the ineffective assistance ground. The district court ruled on the merits of the limitations argument, finding it to be the "heart of the legal issue" Mercedes raised
 
 
 [4]
 The August 2000 motion referred to former counsel's refusal to move to dismiss under the Speedy Trial Act. The district court rejected this argument, holding that dismissal of the indictment was not an authorized remedy for Mercedes's claim under § 3161(j) of the Speedy Trial Act. SeeUnited States v. Lainez-Leiva, 129 F.3d 89, 91 (2d Cir.1997).
 
 
 [5]
 The law now defines aggravated felonies to include crimes of violence for which the term of imprisonment is at least one year. See 8 U.S.C. § 1101(a)(43)(F) (1999)
 
 
 [6]
 As indicated below, the statute of limitations actually did not begin to run until December 1996
 
 
 [7]
 In a footnote in his appellate brief, Mercedes asks us to consider the additional claims made in his pro se motions below, "either as part of this appeal, or at least preserved to the extent that they may be raised anew if this Court agrees that the district court should have allowed the defendant to withdraw his guilty plea." Of those claims, only the Speedy Trial Act argument was appropriately before the district court, and we agree with the decision below that dismissal of the indictment is not an authorized remedy for a violation of § 3161(j). SeeLainez-Leiva, 129 F.3d at 91. Because Mercedes's other pro se claims were never ruled on by the district court, see supra, we decline to consider them. See Bigio v. Coca Cola Co., 239 F.3d 440, 455 (2d Cir.2000) (declining to consider arguments that "were briefed only cursorily before this Court and were not ruled on by the court below").
 
 
 [8]
 Mercedes admits, however, that the "rap" sheet listed at least two other incorrect dates of birth. It also listed Puerto Rico as a place of birth in addition to the Dominican Republic
 
 
 [9]
 These names included "Nelson Manuel Feireira," "Jose P. Roger," "Jose Herman," "Nesol Mersede," "Jayavo Figueroa," "Nelson Manuel Ferrara," "Jose Rodriguez," "Jesus Rodriguez," "Nelson Ferrera," "Robert A. Figueroa," and "Roberto Figueroa."
 
 
 [10]
 In a January 28, 2002 supplemental letter requested by the panel at oral argument, the Government described the procedures employed by state prison officials to notify the INS of possible illegal aliens in state custody. According to the letter, there "has never been... any system that mandates the New York State Department of Corrections to notify the INS when a foreign national is admitted to Rikers Island." There is, however, "an agreement with the Department of Corrections which permits the INS access to inmate files for the purpose of locating potential illegal aliens." Pursuant to that agreement, from August 1993 to August 1996, the INS assigned two special agents to Rikers Island to review inmate files at and conduct interviews based on file reviews. During that three-year period, "approximately 22,000 to 30,000 inmates were housed at Rikers Island at any given time," and "file reviews were conducted at only one of the ten prison facilities at Rikers Island." Moreover, while the Department of Corrections refers a list of inmates who have been convicted and sentenced to the INS for an immigration status interview, "there is no formal notification procedure to the INS for pre-trial detainees." (Mercedes was actually identified by the INSbefore he was sentenced by the state court in May 1997.)
 
 
 [11]
 Although it has no practical impact on the outcome of this case, we disagree with the district court's conclusion that Mercedes was "found" for purposes of § 1326(a) in August 1996. Under the two-part test inRivera-Ventura discussed above, Mercedes was not "found" until December 1996, when the INS determined that he was a previously deported alien.
 
 
 [12]
 SeeUnited States v. Torres, 129 F.3d 710, 715 (2d Cir.1997) (standard of review for denial of motion to withdraw guilty plea is abuse of discretion).
 
 
 [13]
 Mercedes does argue in his appellate brief that he attempted to withdraw his plea "when he learned" that the Government would use an uncharged aggravated felony to increase his sentence. However, the Government contends that Mercedes never moved to withdraw his plea on that ground, and points out that Mercedes does not cite to anything in the record to show that he made such a motion. On our own review of the record, we agree that Mercedes has not adequately demonstrated that he moved to withdraw his plea on the aggravated felony ground
 
 
 [14]
 Mercedes's relies, unconvincingly, onUnited States v. Harrison, 241 F.3d 289 (2d Cir.2001) and Andrades, 169 F.3d 131, for the proposition that the "combination of circumstances" in this case "cast[s] doubt on whether [the] guilty plea was knowing and voluntary." Harrison, 241 F.3d at 295. In Harrison, the district court mistakenly advised the defendant that he was subject to a mandatory minimum sentence, and in Andrades, the district court failed to adequately inform the defendant of the elements of the offense and made no factual inquiry during the plea allocution. No such error occurred in this case.