[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2006
THOMAS K. KAHN
CLERK

No. 06-12058
Non-Argument Calendar

_____

D. C. Docket No. 05-00144-CR-ORL-28-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES AVERY, JR.,
a.k.a. Terry Avery,
a.k.a. James Terry Avery,
a.k.a. James Avery,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 18, 2006)**

Before BIRCH, DUBINA and FAY, Circuit Judges.

PER CURIAM:

James Avery, Jr. appeals his conviction and 210-month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). Avery raises three issues on appeal: (1) whether the district court abused its discretion in denying his motion for mistrial; (2) whether the district court erred in denying his motion to dismiss the indictment; and (3) whether the district court erred in enhancing his sentence based upon prior convictions that were not admitted or proven beyond a reasonable doubt. For the reasons set forth more fully below, we affirm.

## I.  Background

### A.  Motion for Mistrial

On August 30, 2005, a federal grand jury returned an indictment against Avery, charging him with knowingly possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). The indictment listed Avery's prior felonies as: (1) armed burglary, grand theft of a firearm, robbery with a firearm, and grand theft of property in Brevard County, Florida; and (2) armed robbery, robbery, and burglary in Fulton County, Georgia.

During voir dire, the district court read Avery's indictment, including the listed prior convictions, to the venire. After the court had read the entire indictment and voir dire had proceeded, Avery's counsel moved for a mistrial

2

based upon the court reading the entire indictment to the jury where the parties had entered into a stipulation regarding notice to the jury of Avery's specific prior convictions. The parties acknowledged that they had entered the stipulation just before voir dire began and that they notified the court of the stipulation only after the court had read the indictment. The court reserved judgment on the motion for mistrial, but asked each of the venire members whether they felt that Avery deserved any less of a fair trial because he had been convicted of a crime in the past. All venire members answered in the negative. After the court selected the jury, it instructed the jury that "[its] reading of [the] charges is not proof or evidence and you should not consider it at all as such."

After further argument on the motion, the court accepted the stipulation and indicated that it would read the stipulation to the jury. The court nonetheless denied the motion for mistrial, finding that, as the parties conceded, it was not aware of the stipulation prior to reading the indictment to the jury and thus "the objection didn't come until sometime after the court read the charge included in the indictment." The court acknowledged that, after it learned of the stipulation, it twice informed the jury that the indictment was not evidence. The court also agreed to give the jury an additional curative instruction upon Avery's request. After the government rested its case, the court read the stipulation to the jury as follows:

3

The United States of America and defendant James Avery, Jr. jointly agree at the time of the alleged crime Avery previously had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense. Furthermore, Avery never has had his civil rights, including the right to keep and bear firearms, restored by the State of Florida Office of Executive Clemency. The parties jointly agree that this element has been proved beyond a reasonable doubt.

## B. Government's Case-In-Chief

Agent Scott Perala of the Bureau of Alcohol, Firearms, and Tobacco ("ATF") testified that, in February 2005, he investigated numerous persons involved in firearms and narcotics transactions and used the CI Stanley Domino to aid in the investigation. Domino's role in the investigation included introducing Agent Perala to Avery so that Agent Perala could purchase a firearm from Avery. Agent Perala further stated that the general cover story he and Domino used was that Agent Perala was a friend of Domino's from California and that Agent Perala wanted to buy firearms and narcotics to ship back to California. On February 11, 2005, Agent Perala and Domino met Avery at a Publix supermarket. Avery entered Agent Perala and Domino's car and directed them to drive him to a location where he could pick up the firearm and sell it to Agent Perala for $100. Agent Perala and Domino took Avery to a house where Avery gave them a firearm and ammunition.

On cross-examination, Agent Perala testified that he met Avery on February

4

9, 2005 and thought that Avery would have had a firearm to sell him on that day. Avery did not have a firearm on that day, but he indicated to Agent Perala that he knew where a firearm was located and that he intended to steal it and sell it to Agent Perala. Agent Perala told Avery that he would pay him for the gun and that he "already had it sold." Agent Perala then notified his undercover investigation team that he intended to drive Avery to the neighborhood where Avery wanted to conduct the potential burglary. Agent Perala drove Avery to the neighborhood, hoping that Avery "would identify the house he was going to in which case we could arrest him . . . in the course of committing a burglary." Avery did not identify the house.

Agent Perala further testified that, later in the day on February 9, 2005, he sent Domino to find Avery and determine whether he had the firearm. When Domino found Avery, Avery told him that he did not have the firearm and that he planned to wait until nightfall to obtain it. Agent Perala did not arrest Avery, but he and other officers canvassed the neighborhood, contacted the residents, and "did everything they could to even keep [Avery] from doing a burglary or stop him." Avery actually sold Agent Perala the firearm on February 11, 2005. On that day, Agent Perala picked up Avery at the Publix and drove him to a vacant house that did not belong to him, but at which he had stayed the previous night. Avery entered the house and returned to Agent Perala's car with a firearm in his

5

possession.  In response to Avery's counsel's questions regarding whether Agent Perala aided Avery in committing a burglary, Agent Perala stated that, "in my opinion [Avery] was going to do that burglary whether I had anything to do with it or not, so my idea was at least law enforcement is somewhat intrinsically involved and we could find out where he was going."

### C. Motion to Dismiss the Indictment

On September 6, 2005, before trial, the district court had entered a scheduling order, requiring the parties to submit all motions, including motions to dismiss the indictment, by September 26, 2005.  The order also included a waiver provision, which indicated that the failure to raise any defenses or objections in a timely motion would constitute waiver unless the party could demonstrate excusable neglect.  On November 25, 2005, Avery filed a motion to dismiss the indictment on the basis of "outrageous government conduct."  Avery contended that Agent Perala's participation in aiding Avery to commit a burglary and encouraging the criminal activity was extreme and outrageous conduct.   The district court did not rule on Avery's motion to dismiss the indictment, and trial began on November 28, 2005.

Avery renewed his motion to dismiss the indictment at the close of the government's case.  The court first found that Avery's motion was untimely and that he did not establish a sufficient excuse for the delay.  The court also denied

6

Avery's motion on the merits, finding that, while law enforcement's conduct was troubling, it did not rise to the level of a constitutional violation. Avery thereafter made an ore tenus motion for judgment of acquittal based upon the government's outrageous conduct and the violation of Avery's due process rights. The court also gave the jury one final cautionary instruction with regard to not considering the indictment as evidence.

## D. Sentencing

At sentencing, Avery objected to the use of his prior felony convictions to determine his status as an armed career criminal. Avery argued that there was insufficient proof to establish that he committed some of the prior crimes reported in his criminal history, and, thus, they could not support the armed career criminal designation. He further maintained that, in order for his prior convictions to be used to support armed career criminal status, the jury had to find proof of those convictions beyond a reasonable doubt and the court should apply the same standard. The court concluded that the government proved Avery's prior convictions by a preponderance of the evidence, overruled Avery's objection, and found that Avery qualified for the sentencing enhancement based upon his armed career criminal status.

## II. Discussion

## A. Motion for Mistrial

Avery argues on appeal that the district court's reading of the indictment that contained the specifics of his prior felony convictions violated his constitutional rights to due process and a fair trial. He cites the Supreme Court decision in Old Chief[1] to support his argument that he suffered unfair prejudice because the jury heard the nature of his prior convictions and could have used those convictions to reach a verdict in his case. He further contends that the stipulation was valid upon both parties accepting and signing it, which the parties did prior to the start of the voir dire. He maintains that nothing the court did to cure the reading of the entire indictment could have erased the prejudicial effect the reading had on his trial.

We ordinarily review a district court's denial of a motion for mistrial for abuse of discretion. United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998). "When a district court issues a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Id. (quotation omitted). However, the government contends that plain error review applies here due to Avery's untimely objection. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir.), cert. denied, 545 U.S. 1127 (2005) (quotation omitted). When these three factors are met, we may then exercise our

[1]Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

8

discretion and correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Id. We have explained that "[t]he purpose of the plain error rule is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." United States v. Sorondo, 845 F.2d 945, 948-49 (11th Cir. 1988) (quotation omitted). In his reply, Avery does not argue that plain error review should not apply, but he states only that he did not object immediately after the court's reading of the indictment because the "damage was already done." This argument, however, does not explain why Avery did not object immediately when he heard the court start to read the indictment. Thus, plain error review is appropriate here. Regardless, as discussed more fully below, Avery is not entitled to a reversal even under the less stringent abuse of discretion standard.

Avery does not establish on appeal that the court plainly erred or abused its discretion in denying his motion for a mistrial. Avery admits that neither party informed the court of the stipulation prior to voir dire, and, thus, the court had no knowledge that its reading of the indictment violated the terms of the stipulation. Avery contends that the stipulation was binding on the court when the parties accepted and signed it, but Avery cites no support for this conclusion. Assuming without deciding that the stipulation was binding on the court, Avery has not

9

demonstrated that a mistrial was warranted because the court gave numerous curative instructions and there was overwhelming evidence of Avery's guilt. The court inquired whether any member of the venire felt that Avery deserved any less of a fair trial because he had been convicted of a crime in the past, and all venire members answered in the negative. The court also informed the jury five separate times that the indictment was not evidence and that the jury should not consider it as such. See United States v. Brazel, 102 F.3d 1120, 1145 (11th Cir. 1997) (explaining that we presume that a jury follows a district court's curative instructions); United States v. Satterfield, 743 F.2d 827, 848 (11th Cir. 1984) (holding that the district court did not abuse its discretion by erroneously reading to the jury an indictment containing the defendant's alias that had been stricken from the indictment, where the court gave a cautionary instruction and later read the corrected version of the indictment to the jury). The court's instructions were in accordance with what Avery's counsel requested after the court denied the motion for mistrial and the parties had rested their cases. Moreover, Avery's prior convictions were never mentioned again and, upon the parties' request, the court read the stipulation to the jury.

In addition, the government produced substantial evidence of Avery's guilt at trial, regardless of the court's reading of his prior convictions. See United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003) ("an error in admitting evidence

of a prior conviction was harmless where there is overwhelming evidence of guilt"). A conviction under 18 U.S.C. § 922(g)(1) requires the government to prove that a defendant was: "(1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce." United States v. Billue, 994 F.2d 1562, 1565 n.2 (11th Cir. 1993). Avery does not challenge that the government did not prove these elements beyond a reasonable doubt at trial. Furthermore, the parties' stipulation established that Avery was a convicted felon and Agent Perala's testimony provided proof of the remaining elements.

Lastly, as the government correctly argues, Old Chief is not on point in this case. In Old Chief, the Supreme Court determined that a district court abuses its discretion when it rejects the parties' stipulation that a defendant was a convicted felon "when the purpose of the evidence is solely to prove the element of prior conviction." Old Chief, 519 U.S. at 174, 117 S.Ct. at 647. Here, the issue is not whether the court abused its discretion in rejecting a stipulation, because the court actually accepted the stipulation. Rather, as discussed above, the issue is whether the court erred or abused its discretion in not granting a mistrial. Thus, the reasoning of Old Chief is inapplicable for the resolution of Avery's case.

## B. Motion to Dismiss the Indictment

Avery argues on appeal that the indictment should have been dismissed

11

because the government's conduct in his case was extreme and outrageous where the ATF agents aided and abetted Avery in committing two burglaries. He also argues that the motion to dismiss was not untimely because the court did not have sworn facts about the government's conduct until the evidence was produced at trial. He alternatively asserts that the court should have granted his motion for judgment of acquittal, which he made because the court determined that his motion to dismiss was untimely, because the government's conduct was outrageous and violated his due process rights.

We review a district court's denial of a defendant's motion to dismiss an indictment for abuse of discretion. United States v. Clarke, 312 F.3d 1343, 1345 n.1 (11th Cir. 2002). However, a motion to dismiss the indictment due to outrageous government conduct involves a question of law that we review de novo. United States v. Savage, 701 F.2d 867, 868 n.1 (11th Cir. 1983).

A motion to dismiss an indictment must be made prior to trial. Fed.R.Crim.P. 12(b)(3)(B). A district court may set a deadline by which parties must make pre-trial motions. Fed.R.Crim.P. 12(c). However, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver." Fed.R.Crim.P. 12(e). In Avery's case, the district court entered a scheduling order in which the court

12

required that any motion to dismiss the indictment be filed by September 26, 2005. Avery filed his motion to dismiss on November 25, 2005, which was the Friday before his trial began the following Monday. Thus, under the explicit language of Rule 12 and the court's scheduling order, Avery waived his right to move to dismiss the indictment. Nonetheless, Avery argues on appeal that the facts upon which his motion relied could not have been fully discovered until trial. However, given that Avery's motion to dismiss contained three pages of detailed facts regarding the government's conduct in his case, his argument that the necessary facts could not have been discovered prior to trial is meritless. As such, the district court correctly determined that Avery's motion to dismiss was untimely.

Avery alternatively argues on appeal that the court's denial of his motion for judgment of acquittal was erroneous for the same reasons as he argues with regard to the motion to dismiss. Pursuant to Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). Avery did not argue that he was entitled to a judgment of acquittal on sufficiency of the evidence grounds, but rather asserted that it was warranted because of the government's outrageous conduct. Such a ground is not contemplated in Rule 29, and, thus, the district court properly denied Avery's motion for judgment of acquittal.

13

## C. Armed Career Criminal Designation

Avery argues that the district court violated the Sixth Amendment in imposing an enhanced sentence based upon Avery's status as an armed career criminal because the court considered Avery's prior convictions that had neither been admitted nor proven beyond a reasonable doubt. Avery acknowledges that the current case law indicates that the government does not have to prove prior convictions beyond a reasonable doubt, but Avery states that he raises the issue for preservation.

We review constitutional errors at sentencing <u>de novo</u>, but reverse only for harmful error. <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005). With regard to prior convictions that are used to enhance a sentence, the Supreme Court held in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) that the government need not allege in its indictment, and need not prove beyond a reasonable doubt, that a defendant had prior convictions in order for a district court to use those convictions for purposes of enhancing a sentence. <u>Almendarez-Torres</u>, 523 U.S. at 247, 118 S.Ct. at 1233. We explained in <u>United States v. Greer</u>, 440 F.3d 1267 (11th Cir. 2006) that we continue to follow the rule as set forth in <u>Almendarez-Torres</u>. <u>Greer</u>, 440 F.3d at 1274.

At sentencing in Avery's case, the district court determined that the government had proven Avery's prior convictions by a preponderance of the

evidence. According to binding precedent, the district court's use of Avery's prior convictions as a basis for finding him an armed career criminal did not violate the Sixth Amendment.

## III. Conclusion

For the foregoing reasons, the district court did not err in denying Avery's motions for mistrial and dismissal of the indictment, nor did it err in imposing Avery's sentence. Accordingly, Avery's conviction and sentence are **AFFIRMED.**